HILGER, PLAINTIFF, *v.* MOORE, COUNTY TREASURER, DEFENDANT.

. (No. 4,407.)

(Submitted May 10, 1919. Decided June 18, 1919.)

[182 Pac. 477.]

*Taxation—Uniformity Rule—Classification of Property—Constitution—Equal Protection of Laws—Statutes—Presumptions.*

Taxation—Classification of Property—Statutes—Constitution.
  1.  *Held,* that the Constitution (Article XII), does not prohibit the legislature from classifying property for the purpose of taxation, and -that therefore Chapter 51, Laws of 1919, providing for such classification and a percentage basis for the imposition of taxes, is not invalid as in violation of the principle of uniformity of taxation declared in section 1 of Article XII.  (MR. JUSTICE COOPER dissenting.)
    [As to power of legislature to impose tax, see note in 3 Am. St. Rep. 508.]

Same—Statutes—Invalidity—Burden of Proof.
  2.  The burden of showing that the authority of the state legislature to enact a given statute, inherent except as restricted by the state and

federal Constitutions, has been so limited, is upon the party who ques-
tions the validity of the Act.

Same—Powers of Legislature.

3. Taxation for the purpose of raising public revenue is a subject
peculiarly and inherently of legislative cognizance.

Same—"Assessment"—"Taxation"—Definition.

4. "Assessment," within the meaning of section 1, Article XII, of the
state Constitution, is the process by which persons subject to taxation
are listed, their property described, and its value ascertained and
stated; "taxation" is the determination of the rate of levy and impos-
ing it.

Constitutional Law—Division into Chapters and Sections—Effect.

5. The division of the Constitution into chapters and sections is a
matter of convenience for the purpose of reference, and is not of
significance in applying the rules of construction and interpretation.

Same—Construction—Rule.

6. Every provision in the Constitution dealing with the same subject
matter must be considered in determining the meaning of any expres-
sion in it which may be in doubt.

Constitution—Nature of Instrument.

7. The state Constitution is not a grant of, but a limitation upon,
power exercised by the several departments of state government.

Taxation—Nature of Imposition.

8. Taxes are levied against the person, not against property; property
serving only as the basis for computing the measure of his liability
and as security for the discharge of the lien which the tax imposes.

Same—"Subject of Taxation"—Definition.

9. The term "subject of taxation" found in section 11, Article XII,
of the Constitution, *held* to have been used by the constitutional con-
vention in its then popular sense, to wit, to denote the different kinds
of property liable to taxation.

Same—"Property"—Constitution.

10. *Held,* that the definition of "property" in section 17, Article XII,
of the Constitution, was intended as a limitation upon the power of
the legislature to extend, by indirection, the exemptions from taxation
authorized or commanded by section 2 of the Article.

Same—Rule of Uniformity—Constitution.

11. The rule of uniformity of taxation, based upon the mandatory
injunction to the legislature contained in the first sentence of section 1
and a consideration of section 11, Article XII, of the Constitution,
*held* to be: That it shall prescribe such uniform mode of assessment
as shall secure a just valuation of all taxable property; that all taxes
shall be levied and collected by general laws and for public purposes
only, and that they shall be uniform upon the same class of property
within the territorial limits of the authority levying the tax.

Same—Uniform *Ad Valorem* Rule.

12. *Held,* that the "uniform *ad valorem* system" of taxation which
requires that each person owning taxable property of the same value
within the same taxing district, should pay thereon precisely the same
amount of tax, without reference to the character of the property,
never prevailed in Montana.

Constitution—Meaning of Fourteenth Amendment.

13. The inhibition of the Fourteenth Amendment to the Constitution
of the United States, that no state shall deprive any person within its
jurisdiction of the equal protection of the laws, was designed to pre-

vent any person, or class of persons, from being singled out' as a special subject for discrimination and hostile legislation.

Taxation—Special Privileges—Presumptions.

14.   The presumption obtains that in providing for the state's public revenues, the legislature did not intend to grant special privileges, or single out any person or class of persons for discrimination in the matter of taxation.

Same—Classification—Equal Protection of Laws.

15.   Mere classification of property for the purpose of taxation does not bring the statute classifying it within the inhibition of the Fourteenth Amendment guaranteeing the equal protection of the laws.

Same—Classification—Discretion—Presumptions.

16.   Courts will presume that the legislature· exercised a reasonable discretion in enacting a statute classifying property for the purpose of taxation.

Same—Classification—Reviewable, When.

17.   Legislative classification of property for taxation purposes is not reviewable unless palpably arbitrary; its validity not' depending upon scientific or marked difference in the subjects classified.

Same—Statutes—Validity.

18.   That Chapter 51, Laws of 1919, is not perfect or does not present as good a scheme for the taxation of property as might' be devised, is no objection to its validity.

Same—Classification—Equal Protection of Laws.

19.   *Held*, that Chapter 51, Laws of 1919, providing for the classification of property for purposes of taxation, does not infringe upon the guaranty of the equal protection of the laws (Fourteenth Amendment, U. S. Const.).

Statutes—Constitutionality—Rule.

20.   A statute assailed as unconstitutional will not be pronounced invalid unless its nullity is made manifest beyond a reasonable doubt.

Original application for injunction by David Hilger against W. A. Moore, Treasurer of Lewis and Clark County.   Writ issued.

*Mr. Chas. R. Leonard, Messrs. Pray & Callaway,* and *Mr.* *Rudolf von Tobel,* for Plaintiff, submitted a brief; *Mr. Leonard* and *Mr. von Tobel* argued the cause orally.

This case calls for a construction of sections 1, 11 and 17, and section 15, as amended in 1916, of Article XII, of the Montana Constitution.   Does the Constitution of Montana permit of the classification of property for the purpose of taxation, so that different classes shall be assessed at a different percentage of value?   If the Constitution permits of such classification, is the classification made in the Act of 1919, Chapter 51, Acts of the

Sixteenth Legislative Assembly, founded upon a reasonable basis?

In most of the original thirteen states little was said in their Constitutions regarding taxation, further than to give to the legislature a general power to levy taxes for the support of the government. At the present time nearly all of the states, and especially all of the newer states, have a uniformity clause, and many of them have a clause similar to our section 11. In most of the states having this latter clause it reads almost exactly the same as the Montana provisions, but in some of them the word "property" is used instead of the word "subjects." The states having a provision similar to our section 11 are, Arizona, Colorado, Delaware, Georgia, Idaho, Kentucky, Minnesota, Missouri, North Dakota, Oklahoma, Oregon, Pennsylvania and Virginia, but in Arizona, Kentucky and North Dakota the word "property" is used, instead of the word "subjects."

Such provisions as our section 11 are apparently of recent origin, although we have not been able to ascertain when it was first used. It is the result of the feeling on the part of statesmen and economists that absolute uniformity of taxation upon all classes of property, so far from being equitable, works a decided hardship upon some classes of property, the more advanced ideas being that, for the purposes of taxation, property should be classified according to its productiveness.

The North Dakota supreme court, in *State ex rel. Fargo* v. *Wetz et al.* (N. D.), 168 N. W. 835, uses this language, quoted from Professor Seligman's Essay on Taxation: "The standard of ability has been shifted from property to product; the test now is not the extent but the productivity of wealth." The court also refers to "Theory and Practice of Taxation," by D. A. Wells, page 434.

The tendency of legislation upon this subject has been toward a reasonable classification for some years, as affording the only equitable basis of taxation. In most, if not all of the states where classification has been introduced, and upheld by the courts, it has been based upon provisions very similar to our sec-

tion 11, Article XII; and, so far as our research has extended, classification has been upheld in every state where it has been introduced which has provisions similar to our section 11.

This court, in *State* v. *French,* 17 Mont. 54, 30 L. R. A. 415, 41 Pac. 1078, has already held that the first sentence of section 1 and all of section 11, Article XII, of our Constitution, "are upon the same subject, and must be read together, and that they refer to taxation, and the equality and uniformity thereof." This being true, there would seem to be no possible meaning to be given to the words, "they shall be uniform upon the same class of subjects," unless it was intended to admit of a classification of property, as does Colorado under a section similar to our section 11. (See *People* v. *Henderson,* 12 Colo. 369, 21 Pac. 144; *Ames* v. *People,* 26 Colo. 83, 56 Pac. 656.)

The *Henderson Case, supra,* is affirmed in *Pilgrim Consol. Min. Co.* v. *Board of Commrs.,* 32 Colo. 334, 76 Pac. 364. The case of *Foster* v. *Hart Consol. Min. Co.,* 52 Colo. 459, 122 Pac. 48, is squarely in point. (See, also, *Ex parte Kessler,* 26 Idaho, 764, Ann. Cas. 1917A, 228, L. R. A. 1915D, 322, 146 Pac. 113; *Achenbach* v. *Kincaid,* 25 Idaho, 768, 140 Pac. 529; *Mutual Benefit Life Ins. Co.* v. *County of Martin,* 104 Minn. 179, 116 N. W. 572; *State ex rel. Winona Motor Co.* v. *Minnesota Tax Commission,* 117 Minn. 159, 134 N. W. 643.)

Under section 176, Article II, of its Constitution, the legislature of North Dakota in 1917, passed a general classification law, which was challenged in the case of *State* v. *Wetz,* and upheld at the March term, 1918, and, on rehearing, at the June term. The only difference between the provision of the North Dakota Constitution and the similar provisions of our Constitution is that the former uses the word "property," while ours uses the word "subjects," but, in view of the holding of this court in the *French Case,* that the provision contained in section 11 of Article XII relates to taxation, the word "subjects" must be held to bear the same meaning as the word "property" in the North Dakota Constitution.

The constitutionality of laws classifying property for the purposes of taxation is upheld by the supreme court of the United States, in the case of *Southern R. Co.* v. *Greene,* 216 U. S. 400, 17 Ann. Cas. 1247, 54 L. Ed. 536, 30 Sup. Ct. Rep. 287, in which the court says:

"While reasonable classification is permitted, without doing violence to the equal protection of the laws, such classification must be based upon some real and substantial distinction, bearing a reasonable and just relation to the things in respect to which such classification is imposed; and classification cannot be arbitrarily made without any substantial basis."

It was not intended by the Fourteenth Amendment to the Constitution of the United States to prevent a state from adjusting its system of taxation in all reasonable ways, by exemptions, classification, differing rates, and otherwise, so long as they proceed within reasonable limits and general usage. (*Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S. 232, 237, 33 L. Ed. 892, 10 Sup. Ct. Rep. 533; *Pacific Exp. Co.* v. *Seibert,* 142 U. S. 339, 351, 35 L. Ed. 1035, 12 Sup. Ct. Rep. 250.) There are other cases which more or less pointedly uphold the classification of property for the purposes of taxation, under suitable constitutional provisions, but we deem the foregoing sufficient to establish that right.

"A just valuation for taxation" does not necessarily mean that each item of property, whatever its class, must be assessed at the same proportion of its actual value as every other item of every class. It is more reasonable to say that "a just valuation for taxation" means that every item of property shall bear its just proportion of taxation, according to its productivity. The word "just" does not mean equal. Some of its synonyms are: Equitable; honest; true; fair; impartial; proper; according to Webster. There can be as "just a valuation for taxation" under a classification statute, as under a strict *"ad valorem"* law. In fact, under the prevailing doctrines regarding valuations for taxation purposes, there can be no "just valuation for taxation" purposes under the old, iron-clad *ad valorem* system.

If this view be correct, as we maintain, the phrase, "a just valuation for taxation of all property," contained in our Constitution, and which is omitted from the Constitutions of Minnesota and North Dakota, adds nothing to the section, except to make more explicit the requirements of all Constitutions that taxation shall not be so levied as to be unjust to any class, nor more oppressive upon one class than upon every other class. (*State* v. *Wetz, supra.*)

Income tax laws are, or should be, framed upon just lines, but there is no idea of equality in them. They are based upon theories similar to property classification laws, *viz.*: That the one most able to pay shall pay the largest proportionate tax.

*Mr. S. C. Ford,* Attorney General, and *Mr. Frank Woody,* Assistant Attorney General, for Defendant, submitted an original and supplemental brief; *Mr. Woody* argued the cause orally.

Briefly stated, our contention is that this Act violates the uniformity provisions of section 1 of Article XII of the Constitution, in that it does not provide for a uniform rate of assessment and taxation of all property subject to taxation, but unjustly discriminates between property of different classes by subjecting property of different classes to different and unequal rates of assessment and taxation.

In order that the court may readily see the manner in which the amount of taxes will differ on the same values when imposed on property of the different classes, we submit the following illustration: Assuming that the total of all tax levies, state, county, school and city, for the year 1919, on property situated in the city of Helena, will be forty mills on each dollar of valuation, the taxes which will be imposed on each one hundred dollars of taxable property of the several classes will be as follows:

If property is in the 1st class.............................$ 4 00
If property is in the 2d class.......................... 80
If property is in the 3d class.......................... 1 33⅓
If property is in the 4th class......................... 1 20
If property is in the 5th class......................... 28
If property is in the 6th or 7th classes................ 1 60

The result will be that under this Act one taxpayer will be required to pay $4 in taxes on each one hundred dollars of property, while another taxpayer will be required to pay twenty-eight cents on property of exactly the same value but belonging to a different class, the difference in the amount of taxes depending, not on the value of the property owned by each because the property of each is of exactly the same value, but depending and controlled entirely by reason of the fact that the property of one is of a different species or kind than that of the other.

We assert that the words, "and shall prescribe such regulations as shall secure a just valuation for taxation of all property," in section 1 of Article XII, mean that the legislature shall prescribe such regulations as will require all property, of every kind and description, subject to taxation, to be assessed at its true value, and that the legislature is wholly without power to provide for the taxation of property at either more or less than its true value. The words "just valuation" mean, then, true, fair, honest, market value, and the words above quoted mean such regulations as will result in the ascertainment of the true, fair, honest, market value of all property, and this being the meaning of these words, the legislature cannot provide for the assessment or taxation of property at any other than its true, fair, honest, market value, and the regulations which the legislature is required to prescribe are such regulations as will result in the ascertainment of such value. (*Hawkins* v. *Mangum,* 78 Miss. 97, 28 South. 872; *Brown* v. *Greer,* 3 Head (Tenn.), 695; *Jenkins* v. *Ewin,* 8 Heisk. (Tenn.) 456, 477; *Mayor etc. of City of Chattanooga* v. *Nashville etc. Ry. Co.,* 7 Lea (Tenn.), 561; *Street Ry. Co.* v. *Morrow,* 87 Tenn. 406, 415, 2 L. R. A. 853, 11 S. W. 348; *Reelfoot Lake etc. Dist.* v. *Dawson,* 97 Tenn. 151, 161, 34 L. R. A. 725, 36 S. W. 1041.)

And this court, while not so holding directly, in the cases of *Daly Bank and Trust Co.* v. *Board of County Commrs.,* 33 Mont. 101, 81 Pac. 950, and *Northern Pac. Ry. Co.* v. *Mjelde,* 48 Mont. 287 (304), 137 Pac. 386, implied that our constitutional provision requires all property to be assessed at its actual value, and

that the words "prescribe such regulations as shall secure a just valuation" mean that the legislature shall prescribe such regulations as will result in the ascertainment of the actual value of property for taxation. (Then follows an extended review of the history of tax legislation of the territory and state of Montana.)

While numerous decisions may be found holding that constitutional provisions with reference to taxation of property do not require property to be taxed at its actual or full cash value, but that the legislature may provide for the assessment and taxation of property at a percentage of its actual or full cash value, as, for instance, in Illinois where a statute requires all property to be assessed and taxed at twenty per cent of its actual value, or in Iowa where a statute requires that all property shall be assessed and taxed at one-fifth of its market value,—yet it will be found, on an examination of the constitutional provisions of those states in which such decisions are found, that such constitutional provisions are essentially different from those contained in our Constitution. The Illinois constitutional provision (section 1, Article IX) requires all property to be taxed *in proportion to its value.* The Iowa Constitution contains no provisions with reference to taxation. The Missouri Constitution (section 4, Article X) requires that all property shall be taxed in proportion to its value, as does the California Constitution (section 1, Article XIII), and the Constitutions of Alabama (Article XI, section 211), Louisiana (section 225), Nebraska (Article IX, section 1), New Hampshire (Article V), South Dakota (Article XI, section 2), Texas (section 1, Article VIII), and West Virginia (section 1, Article X). And there can be no doubt but what, when the words "in proportion to its value" are used in a constitutional provision, such provision does not require property to be assessed and taxed at its actual value, or cash value, but the legislature has the power to provide for the assessment and taxation of property at any percentage of its actual value. However, when a constitutional provision requires property to be taxed at its "fair market value" (Virginia, section 169, Article XIII), or at its "fair cash value" (Kentucky, section 172) be-

fore last amendment , (Oklahoma, section 8, Article X), or at its "true cash value" (Michigan, section 5, Article X), or at its "true value in money" (Mississippi, section 112; New Jersey, section 7, Article IV; North Carolina, Article V, section 3; North Dakota, Article II, section 176, before last amendment; Ohio, section 2, Article XII), there can be no question but what such provision is mandatory, and the legislature cannot provide for the taxation of property on any basis other than that prescribed by such provision. And if the words "shall prescribe such regulations as shall secure a just valuation," as used in our Constitution, mean that the legislature shall prescribe such regulations as will result in the ascertainment of the "true," "honest," "fair," or "market value" of property for taxation, then, the provisions of our Constitution being mandatory (Constitution, Article III, section 29), the legislature must prescribe such regulations as will secure the "true," "honest," "fair," or "market" value of property for taxation, and has no power or authority to provide for the taxation of property at proportionate values or at percentages of values. .

. We apprehend, however, that counsel for plaintiff will take the position and contend that section 2502, which requires property to be assessed at its full cash value is still in full force and effect, and that even with this Act in force, property will be assessed at its full cash value under section 2502, and that consequently the assessed value of all property of every species and kind will be its full cash value, said Act merely providing that the basis for computing the tax is the percentage provided for each class. In other words, that in assessing property for taxation there is no discrimination between the different classes, because all property belonging to all classes is assessed exactly alike, at its full cash value. Merely stating this contention shows its want of merit. Our constitutional provision does not say "a uniform rate of assessment," or "a uniform rate of taxation," but the words are "a uniform rate of *assessment and taxation.*" The word "assessment," as used in such provision, does not mean merely the valuation of property for taxation, but it has a double

significance, and includes both the appraisement of property for taxation and the apportionment of the tax to the taxable property. It includes the whole statutory mode of imposing the tax, embracing all of the proceedings for raising money by the exercise of the power of taxation from their inception to their conclusion. It is descriptive of the steps in their entirety necessary to charge specific property with taxes or the owners with payment thereof.

And it has been said that the word "assessment," in a restricted sense, means an official list of persons and property, with an estimate of the value of the property of each for the purpose of taxation, while in a general sense, and as commonly used, it implies the completed tax list, that is to say, the names and lists of the persons to be taxed, with valuations of their property, and the taxes set down under their several headings and properly extended and carried out. (*Wason* v. *Major,* 10 Colo. App. 181, 50 Pac. 741; *Consolidated Gas Co.* v. *Baltimore,* 101 Md. 541, 109 Am. St. Rep. 584, 1 L. R. A. (n. s.) 263, 61 Atl. 532; *People* v. *Weaver,* 100 U. S. 539, 25 L. Ed. 705; *Chicago & N. W. Ry. Co.* v. *Forest Co.,* 95 Wis. 80, 70 N. W. 77; *Pomeroy Coal Co.* v. *Emlen,* 44 Kan. 117, 24 Pac. 340; *Hines* v. *Leavenworth City,* 3 Kan. 186, 187; *Town of Washburn* v. *Washburn W. W. Co.,* 120 Wis. 575, 98 N. W. 539; *Jackson Lumber Co.* v. *McCrimmon,* 164 Fed. 759; *First Nat. Bank* v. *City of Binghampton,* 72 App. Div. 354, 76 N. Y. Supp. 526; *Central Ry. Co.* v. *State Board,* 75 N. J. L. 120, 67 Atl. 672; *Western Union Tel. Co.* v. *Howe,* 180 Fed. 44, 103 C. C. A. 398.) And the words "assessment" and "taxation" being coupled together, the "uniform rate" applying to both, it seems clear that it was the intention of the framers of our Constitution to require that the words "assessment and taxation" should mean, include and embrace the whole proceedings from their inception to their conclusion. (*Crawford* v. *Linn County,* 11 Or. 482, 5 Pac. 738; *Lake County* v. *Schroder,* 47 Or. 136, 81 Pac. 942; *Coventry* v. *Board of Assessors,* 16 R. I. 240, 14 Atl. 877.)

Constitutional provisions requiring uniformity of taxation vary greatly in their phraseology. Many of them are similar to those of our Constitution requiring a uniform rate of assessment and taxation, while others also use the word "equal" as well as "uniform" (Florida, Article IX, section 1; Indiana, Article X, section 1; Kansas, Article XI, section 1; Louisiana, Article 225; Mississippi, section 112; Nevada, section 1, Article X; New Mexico, section 1, Article VIII; Oregon, section 1, Article IX; South Carolina, section 1, Article X). Others say that taxation shall be in proportion to the value of the property (Alabama, section 211; California, Article XIII, section 1; Missouri, Article X, section 4; Nebraska, Article IX, section 1; Texas, Article VIII, section 1). Others say that the tax shall be in proportion to the value of his, her or its property (Idaho, Article VII, section 2; Illinois, Article IX, section 1; South Dakota, Article XI, section 2). Others say that taxation shall be by a uniform rule (Michigan, Article X, section 3; Wisconsin, Article VIII, section 1). The Maine Constitution (Article IX, section 8) says that taxes shall be apportioned and assessed equally, while the New Hampshire Constitution (Article V) uses the words "proportional and reasonable assessments." The Arkansas Constitution (Article XVI, section 5), the Tennessee Constitution (Article XI, section 28), and the West Virginia Constitution (Article X, section 1), provide that taxes shall be equal and uniform and no one species of property shall be taxed higher than another species of property of equal value. The framers of both the Utah and the Washington Constitutions were not satisfied with saying that taxes should be equal and uniform, but reiterate the rule in different words. The Utah Constitution in Article XIII, section 2, says that all property shall be taxed in proportion to its value, to be ascertained as provided by law, and in section 3, of the same Article, that the legislature shall provide by law a uniform and equal rate of assessment and taxation on all property according to its value in money, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, so that every person and corporation shall pay a tax in proportion to the value

of his, her or its property, while the Washington Constitution, in sections 1 and 2 of Article VII, uses the identical language used in sections 2 and 3 of Article XIII of the Utah Constitution.

But whatever the phraseology of the provision may be, whether it be as our constitutional provision, that the rate of assessment and taxation shall be uniform, or that taxes shall be in proportion to the value of the property as the constitutional provision of California, or in proportion to the value of his, her or its property, as the Idaho and Illinois constitutional provisions, or apportioned and assessed equally as the Maine constitutional provision, or uniform rule of taxation as the Michigan and Wisconsin constitutional provisions, or proportional as the New Hampshire constitutional provision, or equal and uniform, no one species of property to be taxed higher than another species of property of equal value as the Arkansas, Tennessee and West Virginia constitutional provisions, the rule intended to be stated, the result intended to be accomplished is that taxes shall be uniform on all property subject to *ad valorem* taxation, to the end that the burdens of taxation will be equally distributed; and every taxpayer will be compelled to pay his proportion of taxes according to the value of his property, regardless of its kind or species. The very keynote sounding throughout these constitutional provisions, no matter in what particular words expressed, is uniformity and equality as nearly as practicably attainable. (*Exchange Bank of Columbus* v. *Hines,* 3 Ohio St. 1, 15; *Knowlton* v. *Board of Supervisors,* 9 Wis. 410; *Gilman* v. *City of Sheboygan,* 2 Black (U. S.), 510, 17 L. Ed. 305.) .

In Illinois the courts have said that in order to secure uniformity in the taxation of property, all property subject to taxation must be assessed in proportion to its value, and the rate of taxation must be uniform as to all, and even though property is assessed at less than its full value, the correct proportion between the different classes must be maintained. (*Sherlock* v. *Winnetka,* 68 Ill. 530; *City of Chicago* v. *Fishburn,* 189 Ill. 367, 59 N. E. 791; *Western Union Tel. Co.* v. *City of Omaha,* 73 Neb. 527, 103 N. W. 84; *Cummings* v. *National Bank,* 101 U. S. 153, 25 L. Ed.

903; *Citizens' National Bank* v. *Board of Commrs.*, 83 Kan. 376, 111 Pac. 496; *Andrews* v. *King County,* 1 Wash. 46, 22 Am. St. Rep. 136, 23 Pac. 409; *State* v. *Poynter,* 59 Neb. 417, 81 N. W. 431; *People* v. *McCreery,* 34 Cal. 432; *State* v. *Kruttschnitt,* 4 Nev. 178, 201; *Chicago & N. W. Ry. Co.* v. *State,* 128 Wis. 553, 108 N. W. 557; *Kneeland* v. *Milwaukee,* 15 Wis. 454; *City of Houston* v. *Baker* (Tex. Civ.), 178 S. W. 820; *Lively* v. *Missouri K. & T. Ry. Co.,* 102 Tex. 545, 120 S. W. 852; *Langlay* v. *Smith,* 59 Tex. Civ. 584, 126 S. W. 660; *High School Dist.* v *Lancaster County,* 60 Neb. 147, 83 Am. St. Rep. 525, 49 L. R. A. 343, 82 N. W. 380; *Primm* v. *City of Belleville,* 59 Ill. 142; *Adams* v. *Mississippi State Bank,* 75 Miss. 701, 23 South. 395.)

And we invite the particular attention of the court to the case of *Wheeler* v. *Weightman,* 96 Kan. 50, L. R. A. 1916A, 846, 149 Pac. 977, in which the supreme court of Kansas held a mortgage registration tax law unconstitutional. This decision covers some thirty pages of the report, and exhaustively reviews the uniformity provisions of many of the State Constitutions.

But it will be contended by counsel for plaintiff that section 11 of Article XII of the Constitution expressly and directly authorizes and permits the legislature to classify property into different classes, the only restriction being that taxes shall be "uniform upon the same class of subjects within the territorial limits of the authority levying the tax."

While this court has held in several cases that this provision does not apply to license taxes imposed under the last provision of section 1 of Article XII of the Constitution, but applies to taxes levied against property under the first provision of such section, still we believe that upon examining and studying all of the provisions of Article XII, this court must conclude that such decisions were erroneous in so far as they were held to apply to property taxes levied under the first provision of such section.

Comparing section 1 with similar provisions in the Constitutions of other states, we find that they differ greatly from many of them. This section provides that: "The necessary revenue for the support and maintenance of the state shall be provided

by the legislative assembly which shall levy a uniform rate of assessment and taxation, *etc.;* and the legislature may also impose license taxes.''

The Idaho Constitution, Article VII, section 2, says that the legislature shall provide such revenue as may be needful by levying a tax by valuation, *etc.,* and that the legislature may also impose license taxes. In Idaho, Arkansas, Virginia and Louisiana, it has been held that these provisions only apply to taxes for raising revenue for the state, and not to taxes for raising revenue for county, school district or city or town purposes. (*Fenton* v. *Board of Commrs.,* 20 Idaho, 392, 119 Pac. 41; *Washington* v. *State,* 13 Ark. 752; *McGehee* v. *Mathis,* 21 Ark. 40; *Gilkeson* v. *Frederick Justices,* 13 Gratt. (Va.) 577; *Second Municipality* v. *Duncan,* 2 La. Ann. 182; *New Orleans* v. *Klein,* 26 La. Ann. 493.)

It will be noticed that section 11 of Article XII of our Constitution does not say that taxes shall be uniform upon the same class of property, but that they shall be uniform upon the same class of subjects. Now, there are many subjects of taxation, and property constitutes, under section 17, one subject. If, therefore, it can be said that the provisions of section 11 apply to the property tax provided for by section 1, still, everything mentioned in section 17 being one subject, the taxes which may be levied against everything constituting that subject must be uniform, and if you again divide this one subject into different classes, providing for one rate of taxation for one of such classes and another rate of another class, the provisions of section 11 are violated, as the tax will not then be uniform on that subject. And it might here be observed that the very use of the word "subjects" in section 11, instead of the word "property," also indicates that this provision is to be considered in connection with the provisions of section 5 in which the word "subjects" is used.

Even though it can be said that under our constitutional provisions property may be classified and different rates levied against different classes, or the same rate levied against different percentages or proportions of different classes, yet such

classification must not be arbitrary, invidious or unreasonable, and there must be no unjust discrimination between classes. The classification must rest on some reason of public policy, some substantial difference of situation or circumstances that would naturally suggest the justice or expediency for diverse legislation with reference to the objects or subjects classified. (Judson on Taxation, sec. 454; 37 Cyc. 740, 742; Sedgwick on Construction of Statutory and Constitutional Law, 504–507; Welty on Assessments, secs. 185, 186; Gray's Lim. Taxing Power, secs. 1854–1859; *Gilman* v. *City of Sheboygan,* 2 Black (U. S.), 510, 17 L. Ed. 305; *Pine Grove Township* v. *Talcott,* 19 Wall. (U. S.) 666, 22 L. Ed. 227; *Western Union Tel. Co.* v. *City of Omaha,* 73 Neb. 527, 103 N. W. 84; *Attorney General* v. *Winnebago etc. Co.,* 11 Wis. 35; *George Schuster & Co.* v. *City of Louisville,* 124 Ky. 189, 89 S. W. 689; *Adams* v. *Mississippi State Bank,* 75 Miss. 701, 23 South. 395; *High School Dist.* v. *Lancaster County,* 60 Neb. 147, 83 Am. St. Rep. 525, 49 L. R. A. 343, 82 N. W. 380; *Taylor* v. *Louisville etc. Ry. Co.,* 88 Fed. 350, 31 C. C. A. 537; *Railroad & Tel. Cos.* v. *Board of Equalizers,* 85 Fed. 302; *Pullman State Bank* v. *Manring,* 18 Wash. 250, 51 Pac. 464; *Chicago & N. W. Ry. Co.* v. *State,* 128 Wis. 553, 108 N. W. 557; *Nashville etc. Ry.* v. *Taylor,* 86 Fed. 168; *Rosenbloom* v. *State,* 64 Neb. 342, 57 L. R. A. 922, 89 N. W. 1053.)

Examining the Act here involved, we find that the legislature has arbitrarily fixed the percentage of the value for each class as the basis for apportioning the tax, without any regard to its actual value as compared with the actual value of property of other classes. Why, for instance, should the legislature say that the tax on shares of stock of national banks shall be imposed on a basis of forty per cent of its actual value, while the tax on bonds, notes or other evidences of indebtedness shall be imposed on only seven per cent of the actual value? What difference is there in the characteristics of these two classes, or what conditions or circumstances exist which will warrant the legislature in saying that the owner of stock in a national bank of the actual value of one hundred dollars shall pay a certain tax, while the

owners of a bond, note or other evidence of indebtedness, the actual value of which is exactly the same as that of the bank stock, shall only pay approximately one-sixth of the tax which the owner of the bank stock is compelled to pay? Does not such an attempted classification cease to be classification and become discrimination? If this is not discrimination, then we are at a loss to know where the line falls which divides classification from discrimination.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

At 12 o'clock noon on the first Monday of March of this year, plaintiff owned personal property subject to taxation in Lewis and Clark County, but owned no real estate in that county. His property was duly assessed at $1,000, its full cash value, and upon this valuation the taxes were computed, amounting to $35.05, and the county treasurer thereupon demanded payment. Plaintiff tendered $7.01, and upon refusal of his tender commenced this action to restrain the treasurer from seizing and selling the property.

The controversy involves the validity of House Bill No. 30 (Laws 1919, Chapter 51) entitled: "An Act providing for the classification of taxable property in the state for the purpose of taxation, and providing the percentage of the true and full value of each class which shall be taken and used as the basis for the imposition of the tax thereon."

Section 1 distributes all taxable property into seven distinct classes; the kind of property constituting each of the first six classes being specifically enumerated. The seventh class includes all property not assigned to some one of the preceding classes.

Section 2 provides: "As a basis for the imposition of taxes upon the different classes of property above specified, a percentage of the true and full value of the property of each class shall be taken as follows:

"(a) Class one: 100 per cent of its true and full value.

"(b) Class two: 20 per cent of its true and full value.

"(c)  Class three: 33⅓ per cent of its true and full value.

"(d)  Class four: 30 per cent of its true and full value.

"(e)  Class five: 7 per cent of its true and full value.

"(f)  Class six: 40 per cent of its true and full value.

"(g)  Class seven: 40 per cent of its true and full value."

The property involved in this litigation belongs to class two, and it is conceded that if House Bill No. 30 is a valid legislative enactment, the plaintiff tendered the amount of tax due; if it is not, the amount demanded by the treasurer is the amount to be paid.

1. It is insisted by the treasurer that House Bill No. 30 is [1] unconstitutional, in that the legislative assembly was without authority to classify property for the purpose of taxation.

The legislative department of this state possesses all the [2] powers of law-making which inhere in any independent sovereignty, except only in so far as those powers are curtailed by the Constitution of the state, or the supreme law of the land. (*In re Pomeroy,* 51 Mont. 119, 151 Pac. 333.)  To determine, therefore, whether a statute is valid, it is not necessary to seek the source of the power to enact it.  The authority is inherent if the subject matter is one with reference to which any legislation may be enacted, and the burden of showing that the authority has been withdrawn from the lawmakers is upon the party who questions the validity of the Act.  As said by this court: "The authority of the legislature, otherwise plenary, will not be held to be circumscribed by mere implication.  He who seeks to limit the power of the lawmakers must be able to point out the particular provision of the Constitution which contains the limitation expressed in no uncertain terms."  (*State ex rel. Evans* v. *Stewart,* 53 Mont. 18, 161 Pac. 309.)

Taxation for the purpose of raising public revenue is a subject [3] peculiarly and inherently of legislative cognizance (1 Cooley on Taxation, 3d ed., p. 7), and our legislature was therefore within its authority in enacting House Bill No. 30, unless the authority to do so is denied to it by the state Constitution or by the Constitution of the United States.  The basic contention

of the attorney general, for the treasurer, is that the classification of property by the statute in question violates the principle of uniformity of taxation declared by our state Constitution. Throughout all revenue legislation by the several states there has been recognized some rule of uniformity. Fifty years ago, and prior thereto, the rule was generally understood to require nothing less than this: If A and B each owned taxable property of the same value within the same taxing district, each should pay thereon precisely the same amount of tax, without reference to the character of the property. The rule as thus understood is designated the "uniformity rule of general property taxation," or "uniform *ad valorem* system." By express declaration or by necessary intendment that rule was written into the Constitution of nearly every state. The Constitution of Nebraska declares: "The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property and franchises." (Nebraska Const., Art. IX, sec. 1.) This is a reasonably clear statement in express terms of the rule of uniformity of taxation as it was understood quite generally in 1875. A similar provision is found in the Constitution of Idaho (Article VII, sec. 2); Illinois (Article IX, sec. 1); South Dakota (Article XI, sec. 2); Utah (Article XIII, sec. 3); and Washington (Article VII, sec. 2). It cannot be open to argument that a provision of this character does not admit of classification of property for the purpose of taxation. The meaning is too plain to admit of doubt.

The Constitution of Wisconsin declares, "The rule of taxation shall be uniform" (Wisconsin Constitution, Article VIII, sec. 1), and the same principle, though expressed differently, is to be found in the Constitution of each of some thirty other states. Whenever the question has arisen in any of these jurisdictions, it has been held that the language of the Constitution under review, by necessary implication, evidenced an intention to maintain the rule of uniformity as expressed above. We find no fault with the conclusions reached in the cases so holding.

The rule never prevailed in Colorado or Pennsylvania, and does not prevail in several states by reason of recent constitutional amendments. Does it prevail in Montana? It is the contention of the attorney general that it does, and that it is declared in Article XII, section 1, of our Constitution, in the following language: "The necessary revenue for the support and maintenance of the state shall be provided by the legislative assembly, which shall levy a uniform rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, except that specifically provided for in this article. The legislative assembly may also impose a license tax, both upon persons and upon corporations doing business in the state."

Great stress is laid upon the fact that the legislature is [4] commanded to levy a uniform rate of assessment and taxation. Counsel, however, distort the meaning of the term "assessment." It is said to comprehend the entire process by which taxes are secured—from the inception to the conclusion. If the term has such broad significance, then it includes the entire process of taxation, and the word "taxation," used in conjunction with it, is meaningless. But this court is not authorized to disregard the term "taxation," or to assume that it was used without purpose.

When our Constitution was prepared and ratified, the term "assessment" and the term "taxation" each had a definite, well-understood meaning. Assessment was the process by which persons subject to taxation were listed, their property described, and its value ascertained and stated. Taxation consisted in determining the rate of the levy and imposing it. Speaking generally, the assessment was made by the assessor, subject to review by the board of equalization. The rate of taxation was fixed and imposed by the legislature for state purposes, by the county commissioners for county purposes, by the city council for city purposes, *etc.* This has been the history of our revenue legislation from the time Montana was organized as a territory, and the framers of our Constitution understood these words and used

them accordingly. It may be conceded that they apparently chose to employ inept language, rather than multiply words, for the use of "levy" and "rate," as applied to assessment, is hardly appropriate; but when we consider the entire first sentence of section 1 with other provisions *in pari materia,* the meaning is reasonably clear: The mode of assessment—the rule for ascertaining values—must be uniform, to the end that a just valuation of all taxable property may be secured. This is the rule—the exceptions will be noticed later.

The Act in question has nothing whatever to do with either the assessment of property or the determination of the rate of the tax levy. It is not directed to the assessor. His duties are defined by the statutes in force when this measure was enacted.

The mandate of the Constitution that the legislature shall prescribe such regulations as shall secure a just valuation for taxation of all taxable property was complied with by the first state legislature which passed any laws after the Constitution was adopted. An elaborate revenue measure was enacted, comprising 206 sections, which provided, among other things, for the assessment of all taxable property *at its full cash value,* for the proper methods of ascertaining such value, and for the review of the assessments and the equalization thereof. (Laws 1891, p. 73.) Those provisions, with slight amendments, have been brought forward and constitute the law upon the subject at the present time. (Secs. 2498–2745, Rev. Codes.) The provisions of section 5 of the Act of 1891 have never been changed. "All taxable property must be assessed at its full cash value." (Sec. 2502, Rev. Codes.) This is the command of the statute to-day directed to the assessor and to the boards of equalization.

But it is contended that House Bill No. 30 violates the principle of a uniform rate of taxation declared in section 1. If that section be construed independently of any other provision, the argument of counsel would be persuasive, if not convincing; [5] but the division of our Constitution into chapters and sections is a mere matter of convenience for the purpose of reference, and is not of significance in applying the rules of construc-

tion and interpretation. Every provision dealing with the same [6] subject matter must be considered in determining the meaning of any expression whose meaning is in doubt. (Cooley's Constitutional Limitations, 91.)

Section 11, Article XII, provides: "Taxes shall be levied and collected by general laws and for public purposes only. They shall be uniform on the same class of subjects within the terri-' torial limits of the authority levying the tax." But counsel for the treasurer would have us construe section 1 independently of section 11, upon the theory that each deals with a different subject—section 1 with state taxes exclusively, and section 11 with local taxes exclusively. Indeed, counsel insist that sections 1, 3, 7, 9, 10 and 17 were intended to provide, and do provide, a "method for raising revenue for the support and maintenance of the state," while sections 4, 5 and 11 provide a complete method of taxation for county, city, town and school district purposes. The argument is founded upon an entire misconception of the purpose of Article XII.

Our state Constitution, unlike the Constitution of the United [7] States, is not a grant of power or authority, but is distinctively a limitation imposed by the people upon the several departments of state government. (*McClintock* v. *City of Great Falls*, 53 Mont. 221, 163 Pac. 99.) Article XII does not assume to create or define any system of assessment or taxation. Eliminate it altogether from the Constitution, and the legislature could do everything it can now do, and other things besides, and it was for the express purpose of limiting the lawmakers in legislating upon either of these subjects, that Article XII was inserted. (*State* v. *Camp Sing*, 18 Mont. 128, 56 Am. St. Rep. 551, 32 L. R. A. 635, 44 Pac. 516.) Its limitations are not always expressed in the negative form—thou shalt not—but they are present nevertheless. The legislature is prohibited altogether from subjecting to taxation any of the public property mentioned in section 2. It is prohibited from applying the ordinary rules of assessment to the mining property mentioned in section 3. It is forbidden to levy taxes upon the inhabitants or property of a

county or municipal corporation for local purposes. (Sec. 4.) A limitation is set upon the assessed valuation of property for city, town and school purposes by section 5. Section 6 prohibits the legislature from releasing certain property from the payment of its proportionate share of state taxes. Section 7 forbids the legislature from exempting corporations and corporate property from taxation. Section 9 sets a limit upon the rate of taxation for state purposes. Section 10 prohibits public money being withdrawn from the state treasury except pursuant to specific appropriations made by law. These examples illustrate sufficiently the purpose of Article XII.

Nowhere is the legislature prohibited from classifying property for the purpose of taxation; but, on the contrary, section 11 contains a distinct recognition of the right to do so. Counsel argue, however, that section 11 goes no further than to recognize the right of the legislature to classify *subjects* of taxation, and does not refer to the classification of property. Counsel concede that his argument runs counter to the decisions of this court in *State ex rel. Sam Toi* v. *French,* 17 Mont. 54, 30 L. R. A. 415, 41 Pac. 1078, and *State* v. *Camp Sing,* above. In, the former, Justice De Witt, speaking for the court, said: "We are of the opinion that the first sentence of section 1, Article XII, and the whole of section 11, Article XII, are upon the same subject, and must be read together, and that they refer to taxation, and the equality and uniformity thereof." Since the first sentence of section 1 deals exclusively with property taxation (*Northwestern Mut. Life Ins. Co.* v. *Lewis and Clark County,* 28 Mont. 484, 98 Am. St. Rep. 572, 72 Pac. 982), it would seem that by necessary implication the court held that section 11 does likewise. In the *Camp Sing Case* the court reviewed at great length the several provisions of Article XII, explained their purpose, and reached the conclusion, in effect, that all the restrictions imposed upon the legislature by that Article are restrictions with reference to property taxation. We are asked now to overrule these decisions, but in our judgment the correctness of each of them is beyond question.

The framers of our Constitution did not always use terms in their strict, technical sense; rather they employed them generally, according to their popular significance. Speaking strictly, there is but one subject of taxation—persons, natural or artificial. [8] All taxes are levied against the person, not against property. It is the owner who is taxed because of his ownership, and his property but serves as the basis for computing the measure of his liability and as security for the discharge of the lien which [9] the tax imposes. (*State* v. *Camp Sing,* above.) The term "subject of taxation" is given a broad or restricted meaning, according to the circumstances of the particular case. In its comprehensive sense it denotes the particular thing which measures the amount of the tax, and as such includes every kind of property, real, personal and mixed, not exempt, as well as every other item upon which a rate of taxation may be lawfully imposed. That the framers of our Constitution did not employ the term in its technical sense is perfectly apparent. Neither did they employ it in its broadest sense. The right to take property by inheritance is a subject of taxation according to all authorities, and if the term "subjects" was used in section 11 in its comprehensive sense, then an inheritance tax would have to conform to the uniformity clause; but this court has held that it does not. (*Touhy's Estate,* 35 Mont. 431, 90 Pac. 170.)

At the time our Constitution was prepared and adopted, property and licenses were the only sources of tax revenue in Montana. The so-called poor poll and road poll taxes were then imposed, but neither is a tax within the meaning of that term as employed in the Constitution. (*Pohl* v. *Chicago, M. & St. P. Ry. Co.,* 52 Mont. 572, 160 Pac. 515.) Licenses are excepted from the uniformity provision, so that it is practically certain that the term *subjects* in section 11 was used in its then popular sense to denote the different kinds of property liable to taxation.

The definition of "property" in section 17 of this same Article [10] was intended as a limitation upon the power of the legislature to extend, by indirection, the exemptions authorized or commanded by section 2. It cannot have any other purpose.

Construing the first sentence of section 1 with section 11 the
[11]  meaning is reasonably clear: The taxes levied shall be
uniform upon the same class of property within the same taxing
district.   The entire state is one district for the purpose of rais-
ing state taxes.   Every county is a separate district for county
taxes, every city for city taxes, *etc.*   Or, stating the principle
of sections 1 and 11 in different form, the mandatory injunction
to the legislature is that it shall prescribe such uniform mode of
assessment as shall secure a just valuation of all taxable property,
that all taxes shall be levied and collected by general laws and
for public purposes only, and that they shall be uniform upon
the same class of property within the territorial limits of the
authority levying the tax.   This is the rule of uniformity de-
clared by our Constitution, if we are able to determine the inten-
tion of its framers aright.

As indicating further that it was not the purpose of our Con-
stitution to prohibit the legislature from classifying property for
the purpose of taxation, a reference to section 15, Article XII, is
pertinent.   That section defines the duties of the state board of
equalization as follows: "The state board of equalization may
adjust and equalize the valuation of taxable property among the
several counties and the different *classes of taxable property* in
the same and in the several counties and between individual tax-
payers; supervise and review the acts of county assessors and
county boards of equalization; change, increase or decrease valua-
tions made by county assessors or equalized by county boards of
equalization and has such authority and may do all things neces-
sary to secure a fair, just and equitable valuation of taxable
property among the counties and between the *different classes of
property* and individuals."   Prior to the amendment adopted in
1916, section 15 defined those duties to be "to adjust and equalize
the valuation of the taxable property among the several counties
of the state."   Counsel now urge upon us that the only purpose
of the amendment was to obviate the decisions of this court in
*State ex rel. Wallace* v. *State Board,* 18 Mont. 473, 46 Pac. 266,
and *State ex rel. Board* v. *Fortune,* 24 Mont. 154, 60 Pac. 1086;

but in each case the only question decided was that the state
board could not increase the total assessed valuation of property
in the state as returned by the several counties. The amendment
confers the power which was formerly denied to the board, but
it goes much further and clothes the board with authority to
adjust and equalize the valuation of the different classes of tax-
able property in any county, and to do all things necessary to
secure a fair, just, and equitable valuation of taxable property
among the counties and between the different classes of property.
We cannot restrict the meaning of this amendment as we are re-
quested to do.

That the ironclad rule of uniformity, as first stated above,
[12] never prevailed in this state, a reference to other provi-
sions of Article XII will demonstrate. Section 3 establishes an
artificial and arbitrary rule for the assessment and taxation of
certain mining property without reference to its actual cash
value, while section 9 recognizes the right of the legislature to
provide for the imposition of a tax upon livestock, in addition to
that borne by other property.

There is further slight evidence of a deliberate purpose to
exclude from our Constitution the old "uniform *ad valorem* sys-
tem." Section 1, Article XII, of the Constitution, proposed in
1884, was a literal copy of the section of the Nebraska Constitu-
tion, *ante,* with the exception that the last words "and fran-
chises" were omitted. It declared the uniform rule of general
property taxation in language too clear to admit of doubt. When
the Constitution of 1889 was written, many of the provisions of
the proposed 1884 Constitution were copied *verbatim,* but in
preparing section 1, Article XII, the old draft was abandoned
and for it was substituted the section in the language quoted
above. Many of the members of the first convention were also
members of the second. The same member who presided over the
committee which framed Article XII of the first proposed Con-
stitution was likewise chairman of the committee which drafted
Article XII of our present Constitution. This is a matter of
slight consequence in itself, but it tends to indicate a purpose to

modify the rule of uniformity as it had been understood quite generally theretofore.

Decided cases almost without number have been pressed upon our attention, but they are practically without value in this instance. They construe constitutional provisions altogether unlike our own. Indeed, no other state in the Union has provisions in its Constitution similar to those of ours enumerated above. Some of these may be found in the Constitution of one state; some in another; some of them cannot be found in the Constitution of any other state. A review of these authorities would be a work of supererogation.

The theory of classification of property for the purpose of taxation is not new. In an address before the meeting of the International Tax Association in 1909, Charles J. Bullock, Professor of Economics, Harvard University, directed attention to the fact that immediately following the Civil War discontent with the workings of the uniform *ad valorem* system became general, and that the system had long since been abandoned in most European countries for a system of classification.

In 1869 the supreme court of Pennsylvania, in upholding the right of the legislature to classify property for taxation, said: "To hold otherwise would logically require that all the subjects of taxation, as well persons as things, should be assessed, and an equal rate laid *ad valorem.* Practically no more unequal system could be contrived." (*Durach's Appeal,* 62 Pa. 491, 494.)

In 1885 the supreme court of the United States, in referring to the Kentucky Constitution of 1850, said: "But there is nothing in the Constitution of Kentucky that requires taxes to be levied by a uniform method upon all descriptions of property. The whole matter is left to the discretion of the legislative power, and there is nothing to forbid the classification of property for purposes of taxation and the valuation of different classes by different methods. The rule of equality, in respect to the subject, only requires the same means and methods to be applied impartially to all the constituents of each class, so that the law shall operate equally and uniformly upon all persons in similar

circumstances." (*Kentucky Railroad Cases,* 115 U. S. 321, 337, 29 L. Ed. 414, 6 Sup. Ct. Rep. 57, 63. )

We cannot say whether these expressions of the courts or the prevailing discontent with the "uniform *ad valorem* system" influenced the framers of our Constitution. It is sufficient for us to know that the Article on Revenue and Taxation apparently omits any restriction upon the classification of property for the purpose of taxation.

With the merits of these respective systems we are not concerned in determining the validity of a statute, but in passing we direct attention to the following from the opinion of the supreme court of the United States: "This court has repeatedly laid down the doctrine that diversity of taxation, both with respect to the amount imposed and the various species of property selected either for bearing its burdens or for being exempt from them, is not inconsistent with a perfect uniformity and equality of taxation in the proper sense of those terms; and that a system which imposes the same tax upon every species of property, irrespective of its nature or condition or class, will be destructive of the principle of uniformity and equality in taxation and of a just adaptation of property to its burdens." (*Pacific Express Co.* v. *Seibert,* 142 U. S. 339, 351, 35 L. Ed. 1035, 12 Sup. Ct. Rep. 250, 253.)

In theory, the doctrine of classification seeks to remove the temptation to dishonesty in returning property for assessment; to shift the burden of taxes from property, as such, to productivity, or, in other words, to impose the burdens of government upon property in proportion to its use, its productivity, its utility, its general setting in the economic organization of society, so that everyone will be called upon to contribute according to his ability to bear the burdens, or as nearly so as may be, and to relieve administrative officers from the apparent necessity of continuing the legal fiction of full valuation in the face of contrary facts. Whether in practice it will realize the hopes of its advocates, experience alone will demonstrate.

2. It is further contended that, even though our state Constitution does not forbid a proper classification of property for taxation, the classification provided by House Bill No. 30 is so far arbitrary and unreasonable as to bring the Act within the condemnation of the Fourteenth Amendment to the Constitution of [13] the United States. The inhibition of that amendment, that no state shall deprive any person within its jurisdiction of the equal protection of the law, was designed to prevent any person, or class of persons, from being singled out as a special subject for discrimination and hostile legislation. (*Pembina & Min. Co.* v. *Pennsylvania,* 125 U. S. 181, 188, 31 L. Ed. 650, 8 [14] Sup. Ct. Rep. 737.) It is to be presumed, however, that in providing for its public revenues, this state had no favors to bestow, and did not intend arbitrarily to deprive anyone of his rights. Special privileges are always obnoxious, and discriminations against any person or class still more so, and no presumption will be indulged that the legislature intended to create either.

While it is possible to lay the burdens of taxation so unevenly as to deprive some taxpayers of the equal protection of the [15] law, the mere fact that property is classified for the purpose of taxation does not bring the statute classifying it within the inhibition of the Fourteenth Amendment. As early as 1873 the supreme court of the United States referred to this question and said: "Absolute equality in taxation can never be attained. That system is the best which comes the nearest to it. The same rules cannot be applied to the listing and valuation of all kinds of property. Railroads, banks, partnerships, manufacturing associations, telegraph companies and each one of the numerous other agencies of business which the inventions of the age are constantly bringing into existence, require different machinery for the purposes of their taxation. The object should be to place the burden so that it will bear as nearly as possible equally upon all. For this purpose different systems, adjusted with reference to the valuation of different kinds of property,

are adopted. The courts permit this." (*Tappan* v. *Merchants'
National Bank,* 19 Wall. 490, 504, 22 L. Ed. 189.)

Later, in *Michigan Central R. Co.* v. *Powers,* 201 U. S. 245;
293, 50 L. Ed: 744, 26 Sup. Ct. Rep. 459, 462, the court quoted
with approval from the decision of the trial court in the same
case the following: "There can at this time be no question, after
the frequent and uniform expressions of the federal supreme
court, that it was not designed by the Fourteenth Amendment to
the Constitution to prevent a state from changing its system of
taxation in all proper and reasonable ways, nor to compel the
states to adopt an ironclad rule of equality to prevent the classi-
fication of property for purposes of taxation, or the imposition
of different rates upon different classes. It is enough that there
is no discrimination in favor of one as against another of the
same class, and the method for the assessment and collection of
the tax is not inconsistent with natural justice."

Finally, in 1918, the court again reiterated the principle in the
following terms: "That the state is not, because of the Four-
teenth Amendment, required to tax all property alike, and may
classify the subjects selected for taxation, is too well established
to require citation of the many cases in this court which have so
held. The classification may not be arbitrary and must rest upon
real differences—subject to these qualifications the state has a
wide discretion." (*Northwestern Life Ins. Co.* v. *Wisconsin,*
247 U. S. 132, 139, 62 L. Ed. 1025, 38 Sup. Ct. Rep. 444, 446.)

From the very nature of the subject, there cannot be anything
more than general rules for governing classification. Every state
must adapt its laws to its own peculiar circumstances and
[16] conditions, and the legislature is presumed to have exer-
cised a reasonable discretion in making this classification.
(*Quong Wing* v. *Kirkendall,* 39 Mont. 64, 101 Pac. 250.)

It is not essential to a valid classification that it depends upon
[17] scientific or marked differences in the subjects classified.
It suffices if it is practical, and it is not reviewable unless pal-
pably arbitrary. (*Orient Ins. Co.* v. *Daggs,* 172 U. S. 557, 562,

43 L. Ed. 552, 19 Sup. Ct. Rep. 281; *Hill* v. *Rae*, 52 Mont. 378, Ann. Cas. 1917E, 210, L. R. A. 1917A, 495, 158 Pac. 829.)

In the Act under consideration, class 1 includes the net proceeds of mines; class 2, the property generally exempt from execution, with other property of the same general character; class 3, livestock, agricultural products and merchandise; class 4, lands and improvements, machinery, fixtures and supplies; class 5, moneys and credits; class 6, shares of stock in banking corporations; and class 7, all other property.

The fact that the mining industry is apparently favored by the provisions of section 3, Article XII, of the Constitution, would seem to furnish justification for the imposition of taxes upon the higher percentage of the value of the net proceeds of mines. With reference to the other classes, it is sufficient to say that the difference in the nature and character of the property, its productivity or want of it, its utility, the difficulty of reaching some of it under the old system, the fact that the enforcement of our former tax laws operated as a practical confiscation of the entire income from some species of property, as illustrated in the case of *Cruse* v. *Fischl*, 55 Mont. 258, 175 Pac. 878—these and other reasons equally cogent must have influenced the legislature in making the classification indicated above.

The validity of this statute does not depend upon an affirmative [18] answer to the inquiry: Is the plan of classification perfect? Neither is it of consequence that some other body might devise a better scheme of taxation. In *Travelers' Ins. Co.* v. *Connecticut*, 185 U. S. 364, 371, 46 L. Ed. 949, 22 Sup. Ct. Rep. 673, 676, the court said: "But, further, the validity of this legislation does not depend on the question whether the courts may see some other form of assessment and taxation which apparently would result in greater equality of burden. The courts are not authorized to substitute their views for those of the legislature. We can only consider the legislation that has been had, and determine whether or no its necessary operation results in an unjust discrimination between the parties charged with its burdens. It is enough that the state has secured a reasonably

fair distribution of burdens, and that no intentional discrimination has been made against nonresidents." Other illustrative cases by the supreme court of the United States upholding classification statutes will be found cited in *Hill* v. *Rae,* above.

Primarily, the question of the reasonableness of the classification was for the legislature to determine, or in other words, the classification is presumed to be reasonable. (*Quong Wing* v. *Kirkendall,* above.) We are satisfied that the statute does not infringe upon the guaranty contained in the Fourteenth Amendment.

In conclusion we may say that, from the similarity of the language employed, it is reasonably certain that sections 1 and 11 of Article XII of our Constitution were borrowed from other states. As no other state Constitution contains both sections, it follows that section 1 was taken from a Constitution which did not contain provisions similar to those in section 11, and likewise that section 11 was borrowed from a Constitution which did not contain a section similar to our section 1. The two provisions are not altogether harmonious, and the construction of them intended by the framers, is not very clear. If we have correctly interpreted their meaning, the validity of House Bill No. 30 is placed beyond the range of controversy. In reaching our conclusion, however, it is not necessary for us to say that we are entirely free from doubt. As said by this court in *State ex rel. Campbell* v. *Stewart,* 54 Mont. 504, Ann. Cas. 1918D, 1101, 171 Pac. 755: "In the case of a statute assailed as unconstitutional, we stand committed to the rule that no such enactment will be pronounced invalid unless its nullity is made manifest beyond a reasonable doubt." We are not convinced of the invalidity of House Bill No. 30; on the contrary, it appears to us to be a valid legislative enactment.

It is ordered that an injunction, mandatory and prohibitory in form, issue herein forthwith, first, commanding the defendant treasurer to accept the tender made by plaintiff, and, second, restraining and enjoining defendant from seizing or selling

plaintiff's property in satisfaction of the excess of $28.04, claimed by defendant to be due as taxes.

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE COOPER: I am able to concur in much of the learned discussion of Mr. Justice HOLLOWAY in expressing the views of the majority of the court, particularly that "Article XII of our Constitution does not assume to create or define a system of assessment or taxation"; and that it is not a grant but a limitation of power to be exercised by the several departments of the state government—for the latter presupposes inherent power. To that I will add the authority to classify the different subjects of taxation, for in my opinion the power to tax, and the power to classify were "twinned" at the birth of parliamentary government. I am, however, firmly and unalterably of opinion that sections 1 and 11 of that Article are logically compatible, and that the words therein commanding the legislative assembly to "levy a uniform rate of assessment and taxation," to "prescribe such regulations as shall secure a just valuation for taxation of all property," and to fix rates of taxation that "shall be uniform upon the same class of subjects," are of potent and living force; otherwise the provisions of a Constitution circumscribing delegated authority would be a jumble of meaningless words and mere empty fulminations.

In my opinion, with due deference to the learning and maturity of judgment of my distinguished colleagues, the Act in question, in its attempt to impose taxes on percentages of value ranging from seven per cent on money and credits to 100 per cent on other property, defies the letter, scorns the spirit, and seeks to override the equality clauses of the Constitution and the design of its authors to insure the adoption of some system of uniformity and impartiality making for the just apportionment of the burdens of taxation.

Motion for rehearing denied September 26, 1919.