QUONG WING, RESPONDENT, *v.* KIRKENDALL, COUNTY
TREASURER, APPELLANT.

(No. 2,656.)

(Submitted April 10, 1909.   Decided April 24, 1909.)

[101 Pac. 250.]

*Constitutional Law—Occupation License Fees—Laundries—
Equal Protection of Laws—Statutes—Burden of Proof—Pre-
. sumptions.*

Statutes—Constitutionality.
   1.   A statute may not be declared unconstitutional unless it is clearly
   so.
Same—Occupation Tax—Constitutionality—Burden of Proof—Presumptions.
   2.   The burden of showing that a statute imposing a license tax is un-
   constitutional as denying the equal protection of the laws, in that the
   classification therein made is arbitrary, unreasonable or unjust, rests
   upon plaintiff.   The presumption obtains that the legislature in enact-
   ing it exercised reasonable discretion in making the classification.
Same—Laundries—Statutes—Constitutionality.
   3.   Assuming that section 2776, Revised Codes, providing that every
   person engaged in the laundry business, other than steam laundry busi-
   ness, shall pay a license fee of $10 per quarter, etc., classifies laundries
   for license purposes [which is doubted], into steam laundries and
   laundries operated by hand, such classification *held* not arbitrary or
   unwarrantable.
Same—Occupation Tax—Equal Protection of Laws.
   4.   The legislature is not required to tax all occupations equally or
   uniformly; hence it had power to single out proprietors of hand
   laundries and compel them to pay a license; and so long as the law
   was uniform as to all persons operating such laundries, there was no
   . denial of the equal protection of the laws.
Same—Laundries—Discrimination.
   5.   Section 2776, Revised Codes, imposing a license fee of $10 per
   quarter upon every person engaged in the laundry business, other than
   steam laundries, is not unconstitutional because it exempts from its
   operation women engaged in such business, provided not more than two
   are employed or kept at work.

*Appeal from District Court, Lewis and Clark County; Thos.
C. Bach, Judge.*

ACTION by Quong Wing against Thomas B. Kirkendall,
county treasurer, to recover a license fee paid.   From a judg-
ment for plaintiff, defendant appeals.   Reversed.

*Mr. Albert J. Galen,* Attorney General, and *Mr. E. M. Hall,* Assistant Attorney General, for Appellant.

The legislature is not restricted by the Constitution, and therefore has full authority to impose a license tax either for regulation or for revenue, and the money received may be divided between the state and the counties. (*State* v. *French,* 17 Mont. 54, 41 Pac. 1078, 30 L. R. A. 415; *State* v. *Camp Sing,* 18 Mont. 128, 56 Am. St. Rep. 551, 44 Pac. 516, 32 L. R. A. 635; *State* v. *McKinney,* 29 Mont. 375, 74 Pac. 1095; 25 Cyc. 599, 603; *In re Lipschitz* (N. D.), 95 N. W. 154; Cooley on Taxation, 3d ed., p. 1135.)

"The question of classification of objects upon which a license fee is imposed is purely legislative, and in the absence of abuse will not be interfered with by the court." (*State* v. *McKinney, supra;* 25 Cyc. 606; *Stull* v. *De Mattos,* 23 Wash. 71, 62 Pac. 451, 51 L. R. A. 892; *Garfinkle* v. *Sullivan,* 37 Wash. 650, 80 Pac. 188; *In re Watson,* 17 S. D. 486, 97 N. W. 463.)

*Messrs. Wight & Pew,* for Respondent.

A classification for any purpose must be reasonable and must bear some well-defined relation to the purpose of the law. (*Yick Wo* v. *Hopkins,* 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679; *Gulf Ry. Co.* v. *Ellis,* 165 U. S. 155, 17 Sup. Ct. 255, 41 L. Ed. 666; *State* v. *Cudahy Packing Co.,* 33 Mont. 179, 114 Am. St. Rep. 804, 82 Pac. 833; see, also, *City of Billings* v. *Cook,* 35 Mont. 95, 119 Am. St. Rep. 845, 88 Pac. 656.)

Section 2776, Revised Codes, attempts a classification which is arbitrary as well as unjust. (*State* v. *Loomis,* 115 Mo. 307, 22 S. W. 350, 21 L. R. A. 789; *State* v. *Garbroski,* 111 Iowa, 496, 82 Am. St. Rep. 524, 82 N. W. 959, 56 L. R. A. 570; *Ex parte Jentsch,* 112 Cal. 468, 44 Pac. 803, 32 L. R. A. 664; *City of Pasadena* v. *Stimson,* 91 Cal. 238, 27 Pac. 604; *Darcy* v. *City of San Jose,* 104 Cal. 642, 38 Pac. 500; *State* v. *Haun,* 61 Kan. 146, 59 Pac. 340, 47 L. R. A. 369; *State ex rel. Chapel* v. *Justus,*

90 Minn. 474, 97 N. W. 124; *Kellyville Coal Co.* v. *Harrier,* 207 Ill. 624, 99 Am. St. Rep. 240, 69 N. E. 927; *Brown & Allen* v. *Jacobs Co.,* 115 Ga. 429, 90 Am. St. Rep. 126, 41 S. E. 553, 57 L. R. A. 548; *Magoun* v. *Illinois Savings Bank,* 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037; *Standard Oil Co.* v. *Spartanburg,* 66 S. C. 37, 44 S. E. 377.) In *Montgomery* v. *Kelly,* 142 Ala. 552, 110 Am. St. Rep. 43, 38 South. 67, 70 L. R. A. 209, an ordinance imposing a license on merchants using trading stamps was held void. In *State ex rel, Wyatt* v. *Ashbrook,* 154 Mo. 375, 77 Am. St. Rep. 765, 55 S. W. 627, 48 L. R. A. 265, a law fixing a discriminative license tax upon department stores was held unconstitutional. (See, also, *In re Abel,* 10 Idaho, 288, 77 Pac. 621; *Ex parte Deeds,* 75 Ark. 542, 87 S. W. 1030; *City of Laurens* v. *Anderson,* 75 S. C. 62, 117 Am. St. Rep. 885, 55 S. E. 136.)

Section 8602, Revised Codes, provides that any person doing business without a license where a license is required by law is guilty of a misdemeanor. The penalty for misdemeanor is not to exceed six months in jail or a fine of not more than $500, or both. (Sec. 8111.) A penal statute is to be strictly construed, and this act comes within that rule. "A revenue law requiring peddlers to obtain a license, being penal in so far as it imposes a penalty for a violation of its provisions, must be strictly construed." (*Kloss* v. *Commonwealth,* 103 Va. 864, 49 S. E. 655.)

MR. JUSTICE SMITH delivered the opinion of the court.

Plaintiff brought this action in the district court of Lewis and Clark county to recover the sum of $10, which was exacted of him by the defendant as treasurer of that county. The complaint alleges: That plaintiff is engaged in what may be termed the hand laundry business; that there are steam laundries in operation in the county, the proprietors of which are not required to pay a license; that there is no difference between the plaintiff's business and that of a steam laundry, "except that the plaintiff employs different agencies in the said business; that is to say, this plaintiff uses only hand power for

the propulsion and operation of the implements and appliances used in his business, while said (other) persons use steam power * * * and employ both males and females in said laundry business''; that in addition to the steam laundries there are women engaged in the laundry business in the county "where not more than two women are engaged or employed or kept at work," which business is the same as that of the plaintiff; that said women are not required to pay any money for the privilege of carrying on said business; that said license was demanded by the defendant treasurer by virtue of section 2776, Revised Codes, and was collected solely for the purpose of defraying the general governmental expenses of Lewis and Clark county and the state of Montana; that section 2776, Revised Codes, is the only law on the statute books requiring the payment of a license for the privilege of conducting the laundry business. The section referred to reads as follows: "Every person engaged in laundry business, other than the steam laundry business shall pay a license of Ten Dollars per quarter, *provided* that this Act shall not apply to the women engaged in the laundry business, where not more than two women are engaged or employed or kept at work, and said license shall be for one place of business only." The district court overruled a general demurrer to the complaint, and afterward, in default of an answer, entered judgment in favor of the plaintiff. From that judgment the defendant treasurer has appealed. It is claimed by the plaintiff that he is denied the equal protection of the laws guaranteed him by the Constitution of the United States.

1. Let us first assume, for the purposes of this inquiry, without deciding, that section 2776 classifies those engaged in the laundry business. This question was expressly reserved in *State ex rel. Sam Toi* v. *French,* 17 Mont. 54, 41 Pac. 1078, 30 L. R. A. 415. We assume, also, that this license tax is imposed for the sole purpose of raising revenue for general governmental purposes. It is so alleged in the complaint, and the court had little doubt of the fact when the opinion in *State ex rel. Sam Toi* v. *French, supra,* was prepared, under a somewhat similar statute.

We may not declare this Act unconstitutional unless it is clearly so. (*State* v. *Camp Sing*, 18 Mont. 128, 56 Am. St. Rep. 551, 44 Pac. 516, 32 L. R. A. 635; *State ex rel. Quintin* v. *Edwards*, 38 Mont. 250, 99 Pac. 940.) The legislature is presumed to have exercised a reasonable discretion in making the classification, and the courts ought not to interfere with the action of this co-ordinate branch of the government, until the plaintiff, upon whom rests the burden of proof, clearly shows that he is denied the equal protection of the laws. (*State* v. *McKinney*, 29 Mont. 375, 74 Pac. 1095.) Every intendment is in favor of the validity of the legislative action. In other words, the classification is presumed to be reasonable. (See *City of Fayetteville* v. *Carter*, 52 Ark. 301, 12 S. W. 573, 6 L. R. A. 509; *Van Hook* v. *City of Selma*, 70 Ala. 361, 45 Am. Rep. 85, and *Littlefield* v. *State*, 42 Neb. 223, 47 Am. St. Rep. 697, 60 N. W. 724, 28 L. R. A. 588, where somewhat analogous presumptions were considered.) If on the face of the measure the classification appears to be arbitrary and unreasonable, or unjust, or no classification at all, a different question is presented. Even assuming that section 2776, Revised Codes, classifies laundries, we are not disposed to hold that the classification made is manifestly arbitrary or unreasonable. It certainly is not obviously so on the face of it. If such classification is made, then steam laundries are placed in one class and hand laundries in another. We do not regard the exemption of women from the operation of the statute, in certain cases, as amounting to a classification, for the reasons hereinafter stated. The fact that both steam laundries and hand laundries obtain the same results is not controlling. For aught we know there may be good and sufficient reasons for believing that the difference between the two classes, based upon the power employed in conducting the business, is fundamental and all-pervading. We cannot say that this classification is any more arbitrary or unwarrantable than would be a division of gas-lighting plants and electric-lighting plants into two classes. Assuming that it might appear to the members of this court that steam laundries should pay a larger

license fee than hand laundries, would the court be justified in declaring a statute unconstitutional which exacted the same fee from both? Or suppose the matter were reversed, and the legislature should provide that only steam laundries must pay a license, could it then be successfully contended that persons engaged in that business were discriminated against and denied the equal protection of the laws? We do not think so. The legislature probably had some good reason for exempting steam laundry proprietors from the payment of license, either permanently, or for the time being. In the case of *East St. Louis* v. *Wehrung,* 46 Ill. 392, it was held that an ordinance which did not "discriminate as between persons having equal facilities for profit" was not objectionable. (See, also, *Tulloss* v. *City of Sedan,* 31 Kan. 165, 1 Pac. 285; *City of Cherokee* v. *Fox,* 34 Kan. 16, 7 Pac. 625.) The supreme court of the United States, in *Magoun* v. *Illinois T. & S. Bank,* 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037, said: "There is no precise application of the rule of reasonableness of classification, and the rule of equality permits many practical inequalities; and necessarily so. In a classification for governmental purposes there cannot be an exact exclusion or inclusion of persons and things." (See, also, *Clark* v. *Titusville,* 184 U. S. 329, 22 Sup. Ct. 382, 46 L. Ed. 569.)

But we doubt whether this statute attempts to classify laundries. The Constitution gives the power to impose a license tax upon persons doing business in this state. (Section 1, Article XII, Constitution.) The legislature is not required to tax all occupations equally or uniformly. (*State ex rel. Sam Toi* v. *French,* 17 Mont. 54, 41 Pac. 1078, 30 L. R. A. 415.) Therefore, it appears to follow that the legislature has power to single out the proprietors of hand laundries and compel them to pay a license, and if such license falls upon all hand laundry proprietors alike, no one of them is aggrieved. No suggestion is made that this law is not uniform as to all hand laundry proprietors, either on its face or in its application, except in so far as it exempts certain women, and in all other respects it

appears to us to be uniform and reasonable. "If the constituents of each class are affected alike, the rule of equality prescribed by the cases is satisfied. In other words, the law 'operates equally and uniformly upon all persons in similar circumstances.' " (*Magoun* v. *Illinois T. & S. Bank,* 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037.) The supreme court of Louisiana, in *Kaliski* v. *Grady,* 25 La. Ann. 576, said: "It is contended that the (law) is unconstitutional because it levies a tax of $85 on persons dealing in distilled liquor or retailing spirituous liquors on land, while a tax of only $50 is levied on persons following a like occupation on steamboats, although they may only ply within the limits of a single parish of the state. We fail to see the force of this proposition. The same amount of tax is levied upon all persons pursuing a certain traffic in a certain way, and we do not see how there can be any unjust discrimination in this."

2. It is contended that the law is invalid because one or two women engaged in the laundry business are not required to pay a license. This provision furnishes no just cause for complaint on the part of the plaintiff. We all know that in every community are to be found women, who, through misfortune, are obliged, as the common expression is, to take in washing for a living. Some are widows, some have been abandoned, others are caring for invalid husbands, and all, generally, have small children to support. Probably a bare living is all that is gained by them. Such women do not compete with those laundries which are operated for profit, any more than do those who, from necessity or choice, perform the laundry work for one private family. They are not to be classed with men who are engaged in the business of conducting public laundries. The legislature in its wisdom has seen fit to say to them: "So long as you do not compete with the public laundries, you need pay no license; but in case you manifest an intention to enter into competition by employing additional help, you must thereafter pay the same fee as do men who are likewise engaged." In thus enacting, the legislature but followed the natural dictates of humanity,

and seems to have been actuated by sentiments altogether praise-worthy and commendable.

Mr. Justice Brewer, of the supreme court of the United States, has said this: "History discloses the fact that woman has always been dependent upon man. He established his control at the outset by superior physical strength, and this control in various forms, with diminishing intensity, has continued to the present. As minors, though not to the same extent, she has been looked upon in the courts as needing especial care that her rights may be preserved. Education was long denied her, and while now the doors of the schoolroom are opened, and her opportunities for acquiring knowledge are great, yet even with that, and the consequent increase of capacity for business affairs, it is still true that in the struggle for subsistence she is not an equal competitor with her brother. Though limitations upon personal and contractual rights may be removed by legislation, there is that in her disposition and habits of life which will operate against a full assertion of those rights. She will still be where some legislation to protect her seems necessary to secure a real equality of right. Doubtless there are individual exceptions, and there are many respects in which she has an advantage over him; but looking at it from the viewpoint of the effort to maintain an independent position in life, she is not upon an equality. Differentiated by these matters from the other sex, she is properly placed in a class by herself, and legislation designed for her protection may be sustained, even when like legislation is not necessary for men, and could not be sustained. It is impossible to close one's eyes to the fact that she still looks to her brother and depends upon him. Even though all restrictions on political, personal and contractual rights were taken away, and she stood, so far as statutes are concerned, upon an absolutely equal plane with him, it would still be true that she is so constituted that she will rest upon and look to him for protection; that her physical structure and a proper discharge of her maternal functions—having in view not merely her own health, but the well-being of the race—justify legislation to pro-

tect her from the greed as well as the passion of men.   *   *   *
Many words cannot make this plainer.   The two sexes differ
in structure of body, in the functions to be performed by each,
in the amount of physical strength, in the capacity for long-
continued labor, particularly when done standing, the influence
of vigorous health upon the future well-being of the race, the
self-reliance which enables one to assert full rights, and in the
capacity to maintain the struggle for subsistence.   This differ-
ence justifies a difference in legislation, and upholds that which
is designed to compensate for some of the burdens which rest
upon her.''   (*Muller* v. *Oregon*, 208 U. S. 412, 28 Sup. Ct. 324,
52 L. Ed. 551.)   On such high authority we are content to rest
our opinion on this branch of the case.

The judgment of the district court of Lewis and Clark county
is reversed, and the cause is remanded, with directions to vacate
the order overruling the defendant's demurrer to the complaint,
and to enter, in lieu thereof, an order sustaining the same.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY
concur.

Rehearing denied, May 22, 1909.

Appeal taken to supreme court of the United States, August
21, 1909.