STATE, RESPONDENT, *v.* SUNBURST REFINING CO., APPELLANT.

(No. 5,687.)

(Submitted March 23, 1925. Decided April 4, 1925.)

[235 Pac. 428.]  ·

*Licenses—Taxation—Gasoline—Statutes—Unconstitutionality—* *Denial of Equal Protection of the Law—When Merchandise Ceases to be Article in Interstate Commerce.*

Licenses—Extent of Power of Legislature to Make Classifications of Subjects.

1.  The legislature may make a classification of subjects for property and occupation taxes provided it be reasonable and all of the subjects within a particular class are accorded the same treatment, and the fact that it may discriminate against a member of another class is no objection to the validity of the Act if the classification is based upon substantial distinctions which really makes one class different from another.

Same—When Merchandise Imported into State No Longer Article in Interstate Commerce.

2.  Merchandise (gasoline) brought into Montana from another state and stored in the original packages, afterward to be sold here, is no longer an article in interstate commerce, but is property in this state, and as such subject to a property or license tax.

Same—Statute—Discrimination Against Dealers in Montana-manufactured Gasoline—Invalidity—Constitution.

3.  *Held,* that Chapter 150, Laws of 1923, amendatory of sections 2382 and 2383, Revised Codes of 1921, imposing a license tax upon distributors of and dealers in gasoline, is so arbitrary, unjust and unreasonably discriminatory against dealers in Montana-manufactured gasoline and in favor of those handling gasoline imported into the state, that it is void as denying to the former the equal protection of the law.

Statutes—Constitutionality—Test.

4.  Where a statute imposing a tax is attacked on the constitutional ground that its practical operation results in a denial of the equal protection of the law, the test is not what has been done under it but what may be done under it.

*Appeal from District Court, Lewis and Clark County; W. H. Poorman, Judge.*

ACTION by the State of Montana against the Sunburst Refining Company. From the judgment in favor of the State defendant appeals. The State appeals from that part of the judgment denying to it the right to recover a penalty. Re-

[73 Mont. 68.]

versed and remanded, with directions to enter judgment for defendant, and affirmed as to the State's appeal.

*Messrs. Norris, Hurd & Rhoades* and *Mr. Homer G. Murphy,* for Appellant, submitted an original and a reply brief; *Mr. George E. Hurd,* argued the cause orally.

There need be no citation of authority to the proposition that uniformity is a fundamental concept of taxation, and that while there may be a classification for the purposes of taxation such "classification must be based upon substantial distinctions which make one class really different from another." (*State ex rel. Northern Pac. R. Co.* v. *Duncan,* 68 Mont. 420, 219 Pac. 638.) While, in a sense, license taxes are not within the equality and uniformity requirements of the Constitution (*State ex rel. Sam Toy* v. *French,* 17 Mont. 54, 30 L. R. A. 415, 41 Pac. 1078; *Hilger* v. *Moore,* 56 Mont. 146, 182 Pac. 477), yet such rule operates upon license taxes so as to require that they operate "equally and uniformly upon all persons in similar circumstances." (*Quong Wing* v. *Kirkendall,* 39 Mont. 64, 101 Pac. 250; *Cunningham* v. *Northwestern Imp. Co.,* 44 Mont. 180, 119 Pac. 554; *State* v. *Hammond Pkg. Co.,* 45 Mont. 343, 123 Pac. 407; 17 R. C. L., p. 508, and note 1.) While, in the case of license taxes, an apparent discrimination which in reality makes for equality is proper (*Equitable Life Assur. Co.* v. *Hart,* 55 Mont. 76, 173 Pac. 1062), here we find the exact converse of such a result. Under the statute now under consideration the foreign corporation or the importer of foreign goods has what this court in the *Hart Case* denominates "a considerable advantage." The basis of the attack made upon the statute by appellant herein is that the license provided for therein does not operate uniformly upon persons of the same class or occupation, and is therefore unconstitutional and void. "A classification must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed." (*Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 560, 46 L. Ed.

679, 690, 22 Sup. Ct. Rep. 431 [see, also, Rose's U. S. Notes];
*Standard Oil Co.* v. *Fredericksburg,* 105 Va. 82, 52 S. E. 817;
*Adams* v. *Mississippi Lumber Co.,* 84 Miss. 23, 36 South. 68;
*Ex parte Frank,* 52 Cal. 606, 28 Am. Rep. 642; *Sipe* v. *Murphy,* 49 Ohio St. 536, 17 L. R. A. 184, 31 N. E. 884; *Salt Lake City* v. *Utah Light etc. Ry. Co.,* 45 Utah, 50, 142 Pac. 1067; *City of Seattle* v. *Dencker,* 58 Wash. 501, 137 Am. St. Rep. 1076, 28 L. R. A. (n. s.) 446, 108 Pac. 1086; *Moffitt* v. *Pueblo,* 55 Colo. 112, 133 Pac. 754; *Waters-Pierce Oil Co.* v. *Hot Springs,* 85 Ark. 509, 16 L. R. A. (n. s.) 1035, 109 S. W. 293; *Borataria Canning Co.* v. *State,* 101 Miss. 890, 58 South. 769; *Lincoln Gas & E. L. Co.* v. *Lincoln,* 182 Fed. 926; *Applegarth* v. *State,* 89 Md. 140, 42 Atl. 941; *State* v. *Moore,* 113 N. C. 697, 22 L. R. A. 472, 18 S. E. 342; *Bradley* v. *Richmond,* 227 U. S. 477, 57 L. Ed. 603, 33 Sup. Ct. Rep. 318 [see, also, Rose's U. S. Notes]; Cooley's Const. Lim., 5th ed., 481; *State* v. *Scampini,* 77 Vt. 92, 59 Atl. 201; *Lappin* v. *District of Columbia,* 22 App. D. C. 68; *People ex rel. Phillips* v. *Raynes,* 136 App. Div. 417, 120 N. Y. Supp. 1053; *Id.,* 198 N. Y. 539, 92 N. E. 1097.) Since the only basis for the discrimination apparent under section 2382, Revised Codes, is that of origin, the opinion of the court in the New York case last above cited is particularly applicable herein.

It will be argued by the attorney general that since the sale and distribution of imported gasoline and distillate in original packages is interstate commerce, it may not be taxed, and that therefore the sections are constitutional and nondiscriminatory, in that they operate equally upon all those dealing in gasoline and distillate, who may under the United States Constitution be taxed. (*American Steel & Wire Co.* v. *Speed,* 192 U. S. 522, 48 L. Ed. 538, 24 Sup. Ct. Rep. 365 [see, also, Rose's U. S. Notes].) The supreme court of the United States held that where the original packages have arrived at their destination, are at rest in the state, are enjoying the protection which the laws of the state afford, and are taxed without discrimination like all other property, such tax does not amount

to a regulation, although its levy may remotely and indirectly affect interstate commerce. (See, also, *Sonneborn Bros.* v. *Cureton,* 262 U. S. 506, 67 L. Ed. 1095, 43 Sup. Ct. Rep. 643; *Texas Oil Co.* v. *Brown,* 258 U. S. 466, 66 L. Ed. 721, 726, 42 Sup. Ct. Rep. 375; *New York* v. *Wells,* 208 U. S. 14, 52 L. Ed. 370, 373, 28 Sup. Ct. Rep. 193; *General Oil Co.* v. *Crain,* 209 U. S. 211, 52 L. Ed. 754, 28 Sup. Ct. Rep. 475; *Bacon* v. *Illinois,* 227 U. S. 504, 57 L. Ed. 615, 33 Sup. Ct. Rep. 299; *Armour Pkg. Co.* v. *Lacy,* 200 U. S. 226, 50 L. Ed. 451, 26 Sup. Ct. Rep. 232 [see, also, Rose's U. S. Notes Supp.].)

The statute contravenes section 4 of Article XII of the Constitution of Montana. No pretense is made by any of the provisions of the statute that it was passed under the police power of the state. No provision is made by section 2382, as amended, or any other section of Chapter 150, Laws of 1923, for inspection or regulation. The amount required to be paid is specifically designated as a ''tax,'' and that such is its nature appears in the heading to Chapter 156, Laws of 1921, setting forth the subject matter and purpose of the Act. Such being the case, the tax is clearly one for revenue purposes as defined by this court in *State* v. *Pepper* (Mont.), 226 Pac. 1108, and *State ex rel. Pierce* v. *Gowdy,* 62 Mont. 119, 203 Pac. 1115.

The statute is void as being in contravention of the provisions of section 11, Article XV of the Constitution. The plain purpose of this section is to restrain the state legislature from granting to foreign corporations rights and privileges which are not enjoyed by domestic corporations of like character under similar circumstances. (*Criswell* v. *Montana Cent. Ry. Co.,* 18 Mont. 167, 33 L. R. A. 554, 44 Pac. 525; *State* v. *Thomas Cruse Sav. Bank,* 21 Mont. 50, 45 L. R. A. 760, 52 Pac. 733; *Daily* v. *Marshall,* 47 Mont. 377, 133 Pac. 681; *Lewis* v. *Northern Pac. R. Co.,* 36 Mont. 207, 92 Pac. 469; *Spratt* v. *Helena Power Trans. Co.,* 37 Mont. 60, 94 Pac. 631.) Here the foreign corporations named in the answer are exercising and may exercise a privilege, granted them by the statute in question, which is not and may not be enjoyed by domestic

corporations, under exactly the same circumstances. These
foreign corporations, though in open competition with appellant, are accorded an immunity which must in the end develop
into a monopoly unless corrected. (See 7 Cal. Jur. 217.)

*Mr. L. A. Foot,* Attorney General, and *Mr. A. H. Angstman,*
Assistant Attorney General, for the State, submitted a brief;
*Mr. Angstman* argued the cause orally.

A license tax is not subject to the uniformity provisions of
our Constitution. (*State ex rel. Sam Toi* v. *French,* 17 Mont.
54, 30 L. R. A. 415, 41 Pac. 1078; *State* v. *McKinney,* 29 Mont.
375, 1 Ann. Cas. 579, 74 Pac. 1095; *Quong Wing* v. *Kirkendall,*
39 Mont. 64, 101 Pac. 250; *Hilger* v. *Moore,* 56 Mont. 146, 182
Pac. 477; *State* v. *Hennessy Co.* (Mont.), 230 Pac. 64, 26
R. C. L. 255; 25 Cyc. 605; 37 Cyc. 731.)

The statute does not discriminate against domestic corporations or against Montana producers of gasoline. The statute
imposes the license tax upon distributors and dealers. Before
as well as since the amendment, when the distributor imports
gasoline into Montana and sells to a dealer, tax free, the dealer
must pay the tax when he sells it. On the other hand, when
the distributor pays the tax, then the dealer is exempted from
its payment. To illustrate: If a distributor imports gasoline
into Montana and sells it in the original packages, he pays no
tax, but the dealer buying it in the original packages must
pay the tax when he sells it in the broken packages. If the
distributor imports gasoline into Montana and sells it after
the breaking of the original packages, he pays the tax, and the
dealer does not. If the distributor sells gasoline produced or
refined in Montana, then the dealer upon a resale of the
same pays no tax. The result of the statute in its operation
is this: If a dealer buys gasoline, upon which the distributor
has paid the tax, he is able and willing to pay two cents per
gallon more for it than if purchasing from a distributor selling imported gasoline in the original package on which he

has paid no tax. This, because as to the latter, the dealer, when he sells it, must pay the tax. Hence, the distributor of gasoline produced or refined in Montana is not discriminated against by the statute in favor of a distributor who imports gasoline.

Similar statutes have been upheld by the courts and it has been expressly held that the state has no power to tax the sale in the original packages of imported gasoline. (See *Askren* v. *Continental Oil Co.*, 252 U. S. 444, 64 L. Ed. 654, 40 Sup. Ct. Rep. 355 [see, also, Rose's U. S. Notes Supp.].) The purpose of the proviso in our statute was to meet the objection pointed out by the court in the *Askren Case* and to prevent the statute from amounting to an interference with interstate commerce. Since the passage of our statute, the *Askren Case* again came before the United States supreme court on final hearing, the same being entitled *Bowman* v. *Continental Oil Co.*, 256 U. S. 642, 65 L. Ed. 1139, 41 Sup. Ct. Rep. 606 [see, also, Rose's U. S. Notes Supp.], and the license tax was upheld. (See, also, *Standard Oil Co.* v. *Brodie,* 153 Ark. 114, 239 S. W. 753.) It should be noted at this point that, if the amendment in 1923 has the effect contended for by counsel (but this we emphatically deny), still the law, as thus applied, is exactly what was upheld in the *Bowman Case.* The United States supreme court in the later case of *Sonneborn Bros.* v. *Cureton,* 262 U. S. 506, 67 L. Ed. 1095, 43 Sup. Ct. Rep. 643, decided in June, 1923, attempted to give the state the right to tax such sales when the sales are made after the property is brought to rest within the state, even though in the original packages. However, this does not change the rule as a practical matter, for the evasion of the tax is complete by making the sale before shipping the commodity. In any event, our statute at the time it was enacted went as far as it was possible in the light of the decisions of the federal supreme court in taxing the sale of imported gasoline.

Where the state respects an exemption made by the laws of the United States, as in this case (an exemption occasioned

by want of power in the states to interfere with interstate commerce), the classification resulting cannot be regarded as violative of the uniformity or equal protection clauses of the Constitution. This principle was recognized and applied in the case of *Des Moines National Bank* v. *Fairweather,* 263 U. S. 103, 68 L. Ed. 191, 44 Sup. Ct. Rep. 23.

The statute is not in conflict with section 4, Article XII, of our Constitution. (*State* v. *Camp Sing,* 18 Mont. 128, 56 Am. St. Rep. 551, 32 L. R. A. 635, 44 Pac. 516; *Hilger* v. *Moore,* 56 Mont. 146, 182 Pac. 477.) The case of *State* v. *Pepper* (Mont.), 226 Pac. 1108, cited and relied upon by counsel, did not involve an occupation tax, the court expressly saying that defendant was not subject to an occupation tax under section 1 of Article XII. The tax there involved was upheld as a reasonable police regulation. The case of *State* v. *Gowdy,* 62 Mont. 119, 203 Pac. 1115, also cited, involved a poll tax and not a license tax. Neither of the cases affect the decision of this court in the *Camp Sing Case.*

The statute is not in conflict with section 11, Article XV, of our Constitution. It does not draw any distinction between domestic and foreign corporations. They are all in the same class. Every corporation, whether domestic or foreign, must pay the tax if within the terms of the act. On the other hand, every corporation, whether domestic or foreign, is exempt from payment of the tax, if coming within the exception named in the statute. The tax is the same for foreign corporations as it is for domestic corporations. The domicile of the corporation is of no significance.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In the complaint herein plaintiff alleges that the Sunburst Refining Company, a Montana corporation, with its principal place of business at Great Falls, manufactured and sold in this state during the quarter ending September 30, 1923, 270,740 gallons of gasoline and distillate, and during the next

succeeding quarter 337,332 gallons; that it did not make the quarterly reports within the time prescribed by law, and failed and refused to pay the license tax imposed by the law. Judgment is sought for the amount of the tax due, interest thereon and a penalty.

The answer of the defendant Refining Company admits all the material allegations of the complaint, and by way of special defense sets forth that during the period mentioned certain corporations (naming them), organized under the laws of sister states of the Union, were engaged in manufacturing gasoline and distillate in such other states and in shipping their products into this state in original packages; that corporations organized under the laws of this state, and individuals and concerns were engaged in business in this state, purchasing gasoline and distillate in other states and shipping the same into this state in original packages; that in the conduct of such business these corporations, foreign and domestic, and the individuals and concerns referred to, received such gasoline and distillate, stored them in warehouses and depots at distributing points in this state, and thereafter sold such products in the original packages and delivered them from the warehouses and depots to their customers in this state, and thus entered into direct competition with the defendant herein; and that, if the statute imposing the license tax is enforced, the effect of such enforcement will be an unjust, unreasonable and arbitrary discrimination against this defendant and its business, and in favor of its competitors and their business.

Upon these pleadings judgment was rendered and entered for the amount of the tax found to be due, with interest, and from that judgment defendant appealed. The state prosecuted a cross-appeal from that part of the judgment which denied to it the right to recover the penalty demanded.

Our original gasoline license tax statute was enacted in 1921 (Chap. 156, Laws of 1921), and is found in sections 2381–2396, Revised Codes of 1921. In 1923 sections 2382, 2383 and 2392 were amended, and sections 2393 and 2394 were repealed (Chap.

150, Laws of 1923), and this was the state of the law at the time this cause of action accrued.

Section 2381 provides: ''The term 'distributor' means and includes every person who engages in the business in this state of refining, manufacturing, producing, or compounding gasoline or distillate, and selling the same in this state; and also every person who engages in the business in this state of shipping, transporting or importing any gasoline or distillate into, and making original sales of the same, in this state. The term 'dealer' means and includes every person, other than a distributor, who engages in the business in this state, of distributing or selling gasoline or distillate within the state.''

Section 2382, as amended, provides that every distributor engaged in conducting business in this state shall pay each year ''a license tax for engaging in and carrying on such business in this state, in an amount equal to two cents for each gallon of gasoline, and two cents for each gallon of distillate refined, manufactured, produced, or compounded by such distributor and sold by him in this state, or shipped, transported or imported by such distributor into, and distributed and sold by him within this state, during such year: Provided, however, that no gasoline or distillate distributed or sold by any such distributor in the original packages in which the same was shipped, transported or imported, into this state, shall be included or considered in determining the amount of such license tax,'' *etc.*

Section 2383, as amended, provides that every dealer shall pay each year ''a license tax for engaging in such business in this state, equal to two cents for each gallon of gasoline and two cents for each gallon of distillate sold or distributed by such dealer in this state during such year: Provided, however, that no gasoline or distillate sold by such dealer which, when purchased by him was contained in containers or packages other than the original containers or packages in which the same was shipped, transported or imported into this state, shall be included or considered in

determining the amount of such license tax to be paid by such dealer, but only such gasoline and distillate as was shipped, transported or imported into this state and purchased by such dealer in the original package in which so shipped, transported or imported into this state, and then resold by such dealer after the breaking of such original packages by him, shall be included or considered for the purpose of computing the amount of such license tax.''

The other sections provide for the reports to be made, the time of payment, the distribution of the tax when collected, the penalty for failure to comply with the law, *etc.*

This statute is not in any sense a police regulation. It imposes an excise or occupation tax solely for raising revenue and was doubtless intended to be that form of license tax mentioned in and authorized by the last sentence of section 1, Article XII, of our state Constitution.

Bearing in mind the definitions given in section 2381, above, and that tank-cars, drums and cans are original packages, and our inquiry upon this appeal has to do only with amended sections 2382 and 2383, and the practical operation of those sections can be determined best by the following four illustrations:

1. Since plaintiff produced and sold in this state 100,000 gallons of gasoline and distillate per month, or at the rate of 1,200,000 gallons per year, this statute would require it to pay a license tax of $24,000 per year for the privilege of conducting its business; whereas its competitor, B Company, which manufactured 1,200,000 gallons of gasoline and distillate in an adjoining state, shipped the products into this state in the original packages, stored them in its warehouse, and thereafter sold them to dealers in this state in the original packages—all during the same period—would not be required to pay any license tax whatever, even though the two companies conducted business in the same city and under identical conditions.

2. A. and B., each located in this state, engage exclusively in the business of selling gasoline and distillate in this state in the original packages; each has his entire capital invested in his business; each owes the same duty to the state, and each receives the same measure of protection from the general laws of the state. The two places of business are side by side in the same city, and the two businesses are conducted under identical circumstances and conditions; but A. handles only Montana-made gasoline and distillate, whereas, B. handles gasoline and distillate manufactured in Wyoming. It is the same distance from the common place of business to the Montana refinery from which A. receives his supplies as it is to the Wyoming refinery from which B. obtains his supplies, and the freight rate is the same in each instance, and each sells 1,000,000 gallons of gasoline and distillate in a year. Under this statute, A. must pay a license tax of $20,000 for the privilege of conducting his business, whereas B. is not required to pay any license tax at all.

3. A. manufactures gasoline and distillate in this state and sells these products in the original packages to B., a whole-sale dealer in this state. B. in turn sells the same products in the original packages to C., a retail dealer in this state, and C. sells in the original packages to his customers—the consumers—in this state. Under this act A. must pay two cents for each gallon sold to B., B. must pay two cents per gallon on the same products sold to C., and C. must pay two cents a gallon on the same products sold to his customers, the consumers. In other words, every gallon of this gasoline and every gallon of this distillate is burdened with a license tax of six cents when it finally reaches the consumer. On the other hand, D. manufactures gasoline and distillate in Wyoming and ships the same in the original packages to his warehouse in Montana, where these products are stored. Later he sells in the original packages to E., a wholesale dealer in this state. E. in turn sells the same products in the original packages to F., a retail dealer in this state, and F. sells the same in the

original packages to his customers, the consumers, in this state. The statute does not require D., E., nor F. to pay any license tax whatever, although the two lines of business may be conducted under identical circumstances.

4. A. and B. are engaged in business in the same city in this state, selling gasoline and distillate at retail, not in the original packages, to consumers in this state. Their businesses are conducted under identical circumstances, except that A. handles only Montana-manufactured products, whereas B. handles only Wyoming-manufactured products shipped into this state by a distributor, who sells to him, not in the original packages. Under amended section 2383, A. must pay a license tax of two cents per gallon on every gallon of gasoline and distillate sold by him, for the privilege of conducting his business, whereas B. is not required to pay any license tax whatever.

No one could have the temerity to say that in its practical [1] operation the statute does not discriminate against the manufacturer of or dealer in Montana-manufactured gasoline or distillate. But it is not sufficient, to condemn the statute, that it merely discriminates against some distributors or dealers. Exact equal protection of the law is seldom, if ever, obtained; and because of the very frailty of human agencies, the authorities all recognize the right of the legislative branch of government to make reasonable classification of subjects, for property or occupation taxes (*Hilger* v. *Moore,* 56 Mont. 146, 182 Pac. 477), and if the classification is reasonable and if all of the subjects within a given class are accorded the same treatment, the legislation cannot be said to deny to anyone within such class the equal protection of the law, even though the burden imposed upon him may be more onerous than that imposed upon a member of another class. (*Quong Wing* v. *Kirkendall,* 39 Mont. 64, 101 Pac. 250; s. c., 223 U. S. 59, 56 L. Ed. 350, 32 Sup. Ct. Rep. 192 [see, also, Rose's U. S. Notes].) But to justify such discriminatory legislation and avoid the condemnation of the Fourteenth Amendment to the

federal Constitution, the classification must be reasonable—that is, must be based upon substantial distinctions which really make one class different from another. (*State ex rel. Northern Pac. Ry. Co.* v. *Duncan,* 68 Mont. 420, 219 Pac. 638.)

What, then, is the basis of the classification made by this [2] statute, as the classification is illustrated by the foregoing examples? Not any difference in the amount or character of business transacted, nor any difference in the situation of the parties with reference to the sources of supply, or with respect to the territory covered or the use to which the products are devoted, for they are all the same in every instance. Neither can it be said that the distinction is made to encourage home industry, since the discriminations are all against those who deal in Montana-manufactured gasoline and distillate. The only ground upon which the attorney general seeks to justify the classification is that the statute discriminates only between a business which is a lawful subject of license tax, and one which is not, and this contention has its foundation in the assumption that a license tax imposed upon anyone who sells in the original packages gasoline or distillate shipped into this state from another state, would constitute a burden upon or a regulation of interstate commerce. If this assumption were justified, the argument in support of it would be unanswerable, but since the assumption is altogether unwarranted, the argument falls of its own weight.

Prior to 1923 there may have been justification for a difference of opinion as to the right of this state to use, as a basis for an occupation tax, goods brought into this state from a sister state, deposited in warehouses and depots in this state, and from there sold to consumers and others in this state— all while the goods were in the original package. But this question was finally set at rest by the supreme court of the United States in *Sonneborn Bros.* v. *Cureton,* 262 U. S. 506, 67 L. Ed. 1095, 43 Sup. Ct. Rep. 643. A statute of Texas (Acts 1907, p. 479, Chap. 18) imposed an occupation or license tax upon every dealer in coal-oil or other oils refined from

petroleum, computed at two per cent of the gross sales made within the state. Sonneborn Bros., of New York City, maintained warehouses in Dallas and San Antonio. They shipped oil from New York and other states to Texas in the original packages, stored it in their warehouses, and thereafter sold it in the original package to persons, firms and corporations in Texas. They resisted payment of the license tax upon the ground that it amounted to a burden upon or regulation of interstate commerce. In answering their contention, Chief Justice Taft, for the court, said: "We think it is neither. The oil had come to a state of rest in the warehouse of the appellants and had become a part of their stock with which they proposed to do business as wholesale dealers in the state. The interstate transportation was at an end, and, whether in the original packages or not, a state tax upon the oil as property, or upon its sale in the state, if the state law levied the same tax on all oil or all sales of it, without regard to origin, would be neither a regulation nor a burden of the interstate commerce of which this oil had been the subject." The court then pointed out the distinction between interstate commerce and commerce between a state of this Union and a foreign country, and reaffirmed the conclusion reached in *Woodruff* v. *Parham*, 8 Wall. (U. S.) 123, 19 L. Ed. 382, and in *American Steel & Wire Co.* v. *Speed*, 192 U. S. 522, 48 L. Ed. 538, 24 Sup. Ct. Rep. 365 [see, also, Rose's U. S. Notes]. The court then reviewed its former decisions, which intimated that the same measure of immunity is extended to goods brought into one state from another state as to goods brought into a state from a foreign country (*Standard Oil Co.* v. *Graves*, 249 U. S. 389, 63 L. Ed. 662, 39 Sup. Ct. Rep. 320; *Askren* v. *Continental Oil Co.*, 252 U. S. 444, 64 L. Ed. 654, 40 Sup. Ct. Rep. 355; *Bowman* v. *Continental Oil Co.*, 256 U. S. 642, 65 L. Ed. 1139, 41 Sup. Ct. Rep. 606, and *Texas Oil Co.* v. *Brown*, 258 U. S. 466, 66 L. Ed. 721, 42 Sup. Ct. Rep. 375 [see, also, Rose's U. S. Notes Supp.]), and said: "Upon full consideration and after a reargument, we cannot think this

extension of the exemption referred to, if intended to apply to oil sold after arrival in the state, to be justified either in reason or in previous authority, and to this extent the opinions in the cases cited are qualified.'' The court concluded by upholding the statute as a valid exercise of the state's power.

It may be accepted, then, as settled beyond all further controversy that gasoline or distillate brought into this state from a sister state and stored in the original packages, afterward to be sold in this state, is no longer an article in interstate commerce, but is merely property in this state, and as such does not enjoy any greater privilege or immunity than gasoline or distillate manufactured in this state. In other words, such gasoline or distillate, though brought here from another state and held in the original packages for sale in this state, is subject to a property tax, or may be made the basis of an occupation tax, the same as gasoline or distillate manufactured in this state.

Under our 1923 statute the place of origin is made the [3] sole basis for the classification attempted, and if the legislature may make the place of origin of gasoline or distillate the sole basis for classification, it may impose a license tax upon those who deal in gasoline or distillate manufactured by the Sunburst Refining Company, and exempt those who deal in gasoline or distillate manufactured by the Miles City Refinery Company. But no one would attempt to justify a classification made solely upon the basis that the first-mentioned products were manufactured at Great Falls, while the others were produced at Miles City. The statute cannot be defended upon any theory. In its practical operations it is such an arbitrary, unjust and unreasonable discrimination against those dealing in Montana-manufactured gasoline and distillate as to deny to them the equal protection of the law.

By House Bill 330, approved March 20, 1925, sections 2382, 2383, as amended by the Act of 1921, were again amended, and most, if not all, of the objectionable features eliminated from them, so that, under the existing law, dealers in Mon-

tana gasoline and distillate are no longer penalized solely for patronizing their home industries.

In the brief of the attorney general it is said that gasoline [4] and distillate manufactured in this state have not been subjected to the successive taxes indicated in example 3 above. But it is no argument in favor of the law that the officers did not enforce it. The statute very clearly authorized such successive taxes, and the test is, not what has been done under it, but what may be done under it. (*State ex rel. Holliday* v. *O'Leary*, 43 Mont. 157, 115 Pac. 204.)

The judgment, in so far as it operates against this defendant, is reversed, and the cause is remanded, with directions to enter judgment in favor of the defendant. The judgment, so far as it denies to the state the right to recover the penalty, is affirmed.                                          *Remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS, concur.

Rehearing denied April 21, 1925.

Application by the state to the supreme court of the United States for writ of *certiorari* denied October 12, 1925.