No. 12199

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

PETER KIEWIT SONS' CO.,
a Corporation,

Plaintiff and  Appellant,

-vs-

STATE BOARD OF EQUALIZATION OF THE
STATE OF MONTANA, J. MORLEY COOPER,
Chairman, JOHN C. ALLEY AND RAY J.
WAYRYNEN, as members thereof,

Defendants and Respondents.

---

Appeal from:   District Court of the First Judicial District,
Honorable Victor H. Fall, Judge presiding.

Counsel of Record:

For Appellant:

Garlington, Lohn and Robinson, Missoula, Montana.
Sherman V. Lohn and Lawrence F. Daly argued,
Missoula, Montana.

Amicus Curiae
Scott P. Crampton and Gilbert E. Andrews, Washington,
D. C.
Bruce I. Kogan argued, Washington, D. C.

For Respondents:

Poore, McKenzie & Roth, Butte, Montana.
Robert A. Poore argued, Butte, Montana.
Jene Bell appeared, Helena, Montana.

---

Submitted:  November 27, 1972

Decided: JAN 19 1973

Filed:

Thomas J. Kearney
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a judgment of the district court of the first judicial district, county of Lewis and Clark.

In February and March 1971, plaintiff Peter Kiewit Sons' Co. paid a total of $8,726.47 as gross receipts tax payments in compliance with Chapter 35, Title 84, R.C.M. 1947. At the same time, plaintiff also filed letters of protest with defendant State Board of Equalization challenging the validity of the public contractors' license act and demanded refund of the payments. Within sixty days plaintiff proceeded to bring an action in the district court seeking to have Chapter 35, Title 84, R.C.M. 1947, declared in violation of the laws and Constitution of the state of Montana and the Constitution of the United States, to obtain refund of all taxes and fees remitted to the state of Montana under the chapter in question.

The district court, sitting without a jury, found the provisions of Chapter 35, Title 84, R.C.M. 1947, did not violate the laws or Constitution of Montana nor the Constitution of the United States. Judgment was entered for defendant. Plaintiff filed motions to amend the findings of fact and conclusions of law and for a new trial, which were denied by the trial court. From the judgment and order denying those motions, plaintiff appeals.

In addition to briefs and argument in this Court by counsel for the parties, a brief and oral argument was presented by the United States government as amicus curiae in support of plaintiff's position.

We feel at this point that a brief history of the Act in question would be helpful. The initial version of what became Chapter 35, Title 84, R.C.M. 1947, was passed by the Montana legislature in 1935. It required the licensing by the state of contractors dealing with the state or any of its political subdivisions; federal contractors were excluded from the Act.

In March 1965, in an attempt to ensure the payment of state and local taxes by contractors working in the state, Chapter 277, Laws 1965, was passed by the legislature. The problem arose because some contractors working in the state did not report all of their equipment to county tax assessors, who were attempting to impose county property tax on those contractors. Also, some contractors working in the state would not file corporate or personal income tax returns which would have fairly reflected their business profits from within the state.

Chapter 277, Laws 1965, imposed a 1% tax upon gross receipts of all nonresident public contractors operating within the state. In April 1965, the constitutionality of Chapter 277, Laws 1965, was raised to this Court and the Court found it to be unreasonable discrimination and ruled it unconstitutional. State ex rel. Schultz-Lindsay v. Board of Equalization, 145 Mont. 380, 403 P.2d 635.

In 1967, the Montana legislature again attempted to work out a solution to the problem of contractors not paying their taxes. That legislature enacted a revenue enforcing measure designed to operate hand in hand with Montana's long-standing personal property tax and income tax, to ensure more effective tax collection and reduce tax avoidance. It then passed an amendment to the 1935 licensing act which required a 1% tax upon all receipts of public contractors in the state, including both resident and nonresident contractors, covering all public works within the state including construction done by the United States government.

The revenue enforcing measure was enacted in an attempt to require some of the contractors working in the state to meet their tax responsibilities. The mechanics of the measure are best understood by taking, as an example, the Kiewit contract for part of the Montana Libby Dam project. The contract was given to Kiewit because it was the lowest responsible bidder. The contractor then entered on the performance of its contract and as the work progressed it received payments from the landowner. It paid

1% of such receipts to the State Board of Equalization. In such manner Kiewit has paid or will pay 1% of approximately 6.4 million dollars or about $64,000 to the State Board of Equalization.

This fund is held to the credit of Kiewit on an accounting system adopted by the State Board. The Act operates in the nature of a withholding or prepayment program for Montana property and income taxes. In this case, Kiewit has sufficient items of heavy equipment working on the job at Libby to incur and pay a personal property tax of $35,803.22. Kiewit is entitled to a dollar for dollar credit and actual refund for such personal property taxes from its fund created with the State Board in 1971 by its payment of the 1% gross receipts tax. So any time in 1971, after having paid the personal property taxes Kiewit could, upon showing proof of such payments of personal property taxes, receive a refund of the payments out of the 1% gross receipts tax. Not only could Kiewit obtain refunds of personal property taxes paid in Lincoln County at the job site, but could also have the same benefits for any personal property taxes paid by it that year, anywhere in Montana.

Payments on the job and the corollary 1% tax thereon may come more rapidly than personal property taxes are due or may exceed the amount of such taxes. In that event, the remainder of the 1% fund to the contractor's credit at the State Board may be used to pay, dollar for dollar, the contractor's income taxes. If refunds of the personal property taxes have not consumed the 1% gross receipts tax payments to the State Board, the contractor can take dollar for dollar credit directly against his tax for the balance of gross receipts tax still remaining to his credit at the State Board.

Where there is heavy equipment subject to property tax and/ or net income tax on a job and the taypayer claims the refunds or credits, the gross receipts tax washes itself out. The Act, as can be seen from the credits procedure, was intended as an in-centive to public contractors to declare their items of personal

- 4 -

property for taxation. It also encourages contractors to more fairly allocate out-of-state home office overhead expenses, in part at least, to Montana.

It is true that the Act in practice to date has not resulted in a total washout of the 1% gross receipts payments. It does appear that one of the reasons for this failure is that the federal government has inserted a clause in some of the federal contracts which prohibits a contractor from taking the refunds and credits available to him. Such a clause was in the contract Kiewit had with the federal government. Clause 58(f) of that contract reads:

> "The Act (R.C.M., 1947, sec. 85-3514) allows the license fee based on gross receipts to be used as a credit on: (1) the Contractor's corporation license tax (R.C.M., 1947, Title 84, Chapter 15) or on Contractor's income tax (R.C.M., 1947, Title 84, Chapter 49), depending upon the type of tax the Contractor (or subcontractor) is required to pay under the laws of the State of Montana; and (2) personal property taxes paid in Montana on personal property of the Contractor (or subcontractor) which is used in the business of the Contractor and is located within the State. The Contractor, and, in turn, the subcontractors will not take advantage of these credits." (Emphasis added).

This prohibition by the federal government is of necessity part of the reason there is a surplus of the revenue of the gross receipts tax.

As for other reasons why the Act is not a total wash item, the district court, upon hearing the evidence, found that some of the contractors were not aware of the credit available to them and some were simply indifferent to the use of their credits. In its finding of fact No. 17, the district court said:

> "* * * That the present residue of tax with the State Board or State of Montana is not fairly representative of how the tax is likely to operate in future years."

There has been nothing presented to this Court on appeal which would change the finding of the district court and it is clear that this Act is intended to operate as a revenue enforcing measure.

Appellant's principal argument is that a tax which is placed solely on public contractors is discriminatory. It maintains the only difference between public contractors and private contractors is the status of the party for whom the contractor is working. Such a difference, in appellant's view, is not sufficient to justify the imposition of the tax.

Since that was the same point raised in Schultz-Lindsay, a review of that decision will give us a view of Montana law on the issue of tax discrimination. There, we stated that the legislature may impose a license tax on certain occupations and not on others, as long as "arbitrary and unreasonable classifications" are not permitted. Schultz-Lindsay p. 398.

In Schultz-Lindsay at p. 390, the Court citing State v. Sunburst Refining Co., 73 Mont. 68, 235 P. 428, stated that in making such classifications:

> "'Equal protection of the law is seldom, if ever, obtained; and because of the very frailty of human agencies, the authorities all recognize the right of the legislative branch of government to make reasonable classifications of subjects for property or occupation taxes * * * and if the classification is reasonable, and if all of the subjects within a given class are accorded the same treatment, the legislation cannot be said to deny to anyone within such class the equal protection of the law, even though the burden imposed upon him may be more onerous than that imposed upon a member of another class. [Citing cases] But to justify such discriminatory legislation, and avoid the condemnation of the Fourteenth Amendment to the federal Constitution, the classification must be reasonable---that is, must be based upon substantial distinctions which really make one class different from another. [Citing case] (Emphasis ours.)'"

Later in the same opinion at p. 392, the Court said:

> "'The constitutional safeguard against unjust discrimination in legislation of this type is well defined by the decisions everywhere, and that is, that the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. Mills v. State Board of Equalization, 97 Mont. 13, 31, 33 P. 2d 563.' (Emphasis ours.)"

The state has the duty and authority to levy taxes. Such is required in the Constitution; however, Section 11 of Art.XII

of the Montana Constitution requires that such taxes shall also be uniform upon the class within the taxing authority. Interpreting that section of the Montana Constitution in Schultz-Lindsay at p. 393, this Court said:

> "'"Or, stating the principle of sections 1 and 11 in different form, the mandatory injunction to the Legislature is that it shall prescribe such uniform mode of assessment as shall secure a just valuation of all taxable property, that all taxes shall be levied and collected by general laws and for public purposes only, and that they shall be uniform upon the same class of property within the territorial limits of the authority levying the tax. This is the rule of uniformity declared by our Constitution, if we are able to determine the intention of its framers aright."
>
> "'We think it will be admitted that any tax against the same kind of property used for identical purposes is not uniform when a different valuation and a different rate is applied to two distinct taypayers, separately distinguishable only in name, and the tax being imposed by the same taxing district. We further believe it will be admitted that such disregard of the uniform clause of sections 1 and 11 of Article XII, supra, constitutes clear discrimination.'" (Emphasis theirs).

In Schultz-Lindsay it is clear the state had discriminated against nonresident taxpayers doing public work. All contractors doing public work were not treated in a fair manner as there was no basis to make the distinction between resident and nonresident public contractors. That is not the situation here, because all public contractors are now treated equally, all are taxed on 1% of their gross receipts. There is a class of taxpayers, public contractors, and that class comes under the special tax enforcing measure of the Act. This situation is clearly distinguishable from the Schultz-Lindsay situation. We do not read the law to require all contractors to be taxed in an identical manner, only that members of a class be given the same tax treatment.

It is true that the private contractor does not have the same revenue enforcing measure that the public contractor has, but, "even though the burden imposed upon him may be more onerous than that imposed upon a member of another class", that does not violate the constitutional safeguards if the classification is justified. Schultz-Lindsay, p. 390.

- 7 -

Montana case law has established that the legislature may make classifications for tax purposes on different industries in Montana. As long as the classification is reasonable, it will be upheld. Quong Wing v. Kirkendall, 39 Mont. 64, 101 P. 250; Anaconda Copper Mining Co. v. Junod, 71 Mont. 132, 227 P. 1001; Hale v. County Treasurer of Mineral Co., 82 Mont. 98, 265 P. 6; Norum v. Ohio Oil Co., 83 Mont. 353, 272 P. 534.

Our question now is---is it reasonable to make a classification for tax purposes for contractors doing public work and not for contractors doing private work?

At trial, respondent State Board stressed the differences between the two types of contractors in this manner:

1. A public work is intended for the use of the public and if the work is inadequate in some particular way, this could expose and would expose some part of the public at large to danger, inconvenience, or injustice. That of course would not be always true in the case of a private contractor.

2. Public contractors must be experienced, they must establish their qualifications to the state or federal government. However, private property owners could engage a licensed or unlicensed contractor or an experienced or inexperienced one.

3. Public contractors invariably must provide a bond. Private works require bonds only at the election of the owner.

4. Public works normally would involve elaborate, professionally drawn plans and specifications. They would also include mandatory supervision or inspection. Private works would have such inspection and/or supervision at the option of the owner.

Appellant argues that all of the above mentioned areas are also normally included in any private contracting job in the state; therefore, there is no justification of the classification. We do not agree. It may be true that private contractors will take many of the same precautions required by the state or federal government, but the point is that when dealing with public works these precautions must be taken. People of the state have

a right to make sure that a building built with their money is safe and that the contractor is qualified in all respects. For this reason it is clear how the classification can be made--- for the protection of the public good. The duty of a contractor is to the person paying the bill, in the case of a public con- tractor it is the taxpayer. In order to ensure that the duty is met, the state can and does deal with public contractors in a different way than private contractors. Because of this basic difference, there is no reason why they cannot be taxed in a different manner, as long as all in the same class are treated equally.

In Quong Wing v. Kirdendall, 39 Mont. 64, 69, 101 P. 250, the Court said:

> "The Constitution gives the power to impose a
> license tax upon persons doing business in this
> state. * * * The legislature is not required to
> tax all occupations equally or uniformly. * * *
> 'If the constituents of each class are affected
> alike, the rule of equality prescribed by the
> cases is satisfied. In other words, the law
> "operates equally and uniformly upon all persons
> in similar circumstances.""'"

What could be more uniform than requiring all public contractors to pay this tax, all members of the class are treated alike.

The United States Supreme Court has given the states great latitude and freedom to effect tax classifications, as long as they are not arbitrary or capricious. In Brown-Forman Co. v. Kentucky, 217 U.S. 563, 30 S.Ct. 578, 54 L ed 883, 887, the state of Kentucky levied a 1 1/4 cent per gallon tax on every corporation or individual engaged in the business of compounding, rectifying, adulterating or blending distilled spirits. Corporate or individual distillers of pure or unadulterated spirits were not so taxed. A producer of blended spirits brought an action stating the tax was discriminatory. In upholding the state's power to tax, the United States Supreme Court said:

> "A very wide discretion must be conceded to the
> legislative power of the state in the classification
> of trades, callings, businesses or occupations which

> may be subjected to special forms of regulation
> or taxation through an excise or license tax.
> If the selection or classification is neither
> capricious nor arbitrary, and rests upon some
> reasonable consideration of difference or policy,
> there is no denial of the equal protection of
> the law."

We believe that a distinction between public and private contractors is not arbitrary or capricious and following the reasoning of the United States Supreme Court---the state of Montana has the power to make such a distinction and the statute in question is not unconstitutional.

The second half of the discrimination question raised by appellant is that this tax discriminates against the federal government. It urges that the state of Montana is required to treat the United States and other public bodies as well as it treats private nongovernmental parties. Appellant contends granting a preferred tax status to a substantial number of taxpayers, contractors performing work for private owners, and failing to grant a comparable status to construction contractors of the United States, constitutes unconstitutional discrimination against the United States and those with whom it deals.

In response to this argument, respondent Board contends, basically, that since the state of Montana is treated in tax matters with public contractors the same as the federal government is treated, there is no discrimination. Counsel for both parties cite in support Phillips Chemical Co. v. Dumas School District, 361 U.S. 376, 80 S.Ct. 474, 4 L ed 2d 384, 391, and Moses Lake Homes v. Grant County, 365 U.S. 744, 81 S.Ct. 870, 6 L ed 2d 66.

In Phillips Chemical Co., the state of Texas levied a tax on leases where the United States government was the lessor, but did not provide for such a tax where the state of Texas was the lessor. The court found this type of taxation was discriminating against the federal government and therefore invalid. The court stated:

> "* * * it does not seem too much to require that
> the State treat those who deal with the Government
> as well as it treats those with whom it deals itself."

In _Moses Lake Homes_, the state of Washington sought to tax leasehold interests wherein the federal government was the lessor at a higher rate than it taxed leasehold interests where the state of Washington was the lessor. The court stated that _Moses Lake Homes_ was indistinguishable from _Phillips Chemical Co._ and ruled that a tax which discriminated against the federal government was invalid.

Here, we do not believe that the state of Montana has discriminated against the federal government. The federal government is being treated in the same manner as the state of Montana treats itself and its subdivisions or municipalities. The only discrimination the federal government can claim is that private contractors are not paying the same tax as public contractors. However, according to case law, all the United States Supreme Court has required is that the state does not give itself special treatment over that received by the federal government. The Act involved here treats the federal government in the same manner as it treats those who deal with any part of the state government. The second half of the discrimination question is denied.

Appellant and amicus curiae argue that the Act is invalid because it results in interference with federal government functions and is in conflict with federal procurement legislation. Therefore, it violates the supremacy clause of the United States Constitution. Their basis for such argument is that our licensing statute gives Montana the power of review as to whether or not a contractor can operate within Montana, even if he has already been awarded a public contract.

All parties cite Miller v. Arkansas, 352 U.S. 187, 77 S.Ct. 257, 1 L ed 2d 231. There, Arkansas had a licensing statute similar to the one in question here which allowed the state to review contractors who had been awarded public contracts, including federal contracts, as to their fitness to perform the work. Under the authority of that statute, the state brought an action against a contractor awarded a federal contract because that contractor

was not licensed in Arkansas. In reviewing the case, the United States Supreme Court held simply that the statute was not applicable to contractors working on federal government contracts. We do not find the United States Supreme Court stated that such Arkansas statute was unconstitutional per se. It only stated that the state does not have the power to review federal contractors as to their fitness.

Here, we hold, as did the district court, that the provisions of the Act which pertain to qualifications or competence of public contractors is not applicable to federal contractors. The qualifications test of the Act remains in force in regard to contractors working on state contracts, and the gross receipts tax will remain in force as to all public contractors performing work in Montana.

Finally, it is argued that this Act violates the immunity of the federal government from taxation or the economic impact of taxation. It has been established that a state cannot tax the federal government. But, the state can tax an independent contractor for the privilege of doing work within the state. The United States Supreme Court decided that point in James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 82 L. ed 155, 166, 173.

In James, the plaintiff was a contractor domiciled in Pennsylvania. As an independent contractor it had four construction contracts with the federal government for the building of locks and dams in the Kanawha River and Ohio River within the state of West Virginia. West Virginia had a statute known as the gross sales and income tax law which provided for annual and privilege taxes on contractors doing business in the state of West Virginia. The tax was 2% of the gross income of the contractor within the state. Such tax was in addition to all other state taxes. The court was faced with this problem: "Is the tax invalid upon the ground that it lays a direct burden upon the Federal Government?" To that question the court answered:

_ 12 _

"* * * the West Virginia tax * * * does not interfere in any substantial way with the performance of the federal functions and is a valid exaction."

The court then went on to point out that the economic impact upon the federal government must be direct and substantial and that the 2% gross tax was neither direct nor substantial. For a further discussion of this rationale, see Silas Mason Co. v. State Tax Commission, 188 Wash. 98, 61 P.2d 1269.

Following the reasoning of the United States Supreme Court, we find the tax involved here was not aimed at nor does it impede the federal government in performing its functions. If there is any burden on the federal government, it is indirect and not substantial. The tax is valid.

The judgment of the district court is affirmed.

_Wesley Castles_
Associate Justice

We Concur:

_James T. Harrison_
Chief Justice

_Frank I. Haswell_

_Gene B. Daly_

_John Conway Harrison_
Associate Justices.

- 13 -