JOHN F. HARVEY, Plaintiff and Respondent, v. ALEX BLEWETT, Jr., S. M. HALVORSON, J. M. NASS, AR- NOLD M. SWANSON and DALLAS VAN DELINDER, as members of and constituting the Montana State Highway Commission; and HENRY ANDERSON, Treasurer of the State of Montana, Defendants and Respondents. STATE FISH AND GAME COMMISSION, Defendant and Appel- lent, v. MARY ARNOLD et al., Intervenors.

No. 11282.
Submitted May 6, 1968.
Decided July 25, 1968.
443 P.2d 902.

428

Brinton Markle, Chadwick H. Smith, argued, Helena, for appellant.

Donald D. MacPherson, Lloyd J. Skedd, Helena, Patrick F. Hooks, argued, Townsend, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal brought by defendant and appellant, State Fish and Game Commission, hereinafter referred to as the State, from a judgment entered for plaintiff Harvey. The judgment declares unconstitutional certain legislation enacted by the legislature in 1963, Chapters 223 and 224, Laws of 1963; and in 1965, section 7, Chapter 69, section 1, Chapter 248, and section 4-301 of Chapter 197, Laws of 1965.

The legislation generally provides (1) that 1 percent of all gasoline license tax revenue be credited to the state park fund for use in creation, improvement and maintenance of state parks where motorboating is allowed, and (2) that refund of gasoline license taxes shall not be made to persons who purchase and use gasoline in motorboats.

Harvey operates two motor vehicles. He also owns a pleasure motorboat which he operates primarily on Georgetown Lake. He belongs to a boating club, a corporation. To operate both his motor vehicles and his motorboat, he buys gasoline. The State levies a license tax on the dealer of the gasoline in the amount of 6¢ per gallon. Prior to 1963, Harvey was entitled, under the terms of section 84-1818, R.C.M.1947, to a refund of that portion of the tax for gasoline used in his motorboat. This refund he had assigned to his boat club.

Harvey brought the action for himself and others similarly situated under the Declaratory Judgments Act alleging damage as a shareholder in the boat club, which could no longer receive refunds he had been assigning to it, and as a taxpayer interested in the expenditure of state funds.

Harvey alleged that the statutes, heretofore mentioned, are unconstitutional as contravening the Fourteenth Amendment of the United States Constitution:

"* * * nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."
and Article III, sections 3 and 27 of the Montana Constitution:

"Sec. 3. All persons are born equally free, and have certain natural, essential, and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties, of acquiring, possessing, and protecting property, and of seeking and obtaining their safety and happiness in all lawful ways."

"Sec. 27. No person shall be deprived of life, liberty, or property without due process of law." and as contravening the anti-diversion amendment to the Montana Constitution, Article XII, section 1b:

"No monies paid into the state treasury which are derived from fees, excises or *license taxes relating to registration, operation or use of vehicles on the public highways or to fuels used for the propulsion* of such vehicles, except fees and charges paid to the board of railroad commissioners of the state of Montana and the public service commission of Montana or its successor or successors by motor carriers pursuant to law, *shall be expended for other than cost of administering laws under which such monies are derived, statutory refunds and adjustments provided therein,* payment of highway obligations, cost of construction, reconstruction, maintenance and repair of public highways, roads, streets, and bridges, and expenses

authorized by the state legislature for dissemination of· public information relating to the public highways, roads, streets, and bridges of the state of Montana and the use thereof." (Emphasis supplied.)

The subject matter and effect of the five legislative acts involved are:

Chapter 223 of the Laws of 1963, and each of the acts of the 1965 Legislative Assembly here complained of, involve the distribution and use of tax funds received by the state of Montana from the gasoline license tax. Each of these statutes amends section 84-1812, R.C.M.1947, by diverting one per cent of said tax funds to a special fund for the use and benefit of certain state parks wherein motorboating is allowed.

Prior to 1963, and until 1967, section 84-1801.1 provided for a license tax of six cents for each gallon of gasoline "refined, manufactured, produced or impounded by such dealer, and distributed, used or sold by him in this state, or shipped, transported, or imported by such dealer into and distributed, used or sold by him within this state * * *." Prior to the enactment of Chapter 223, in 1963, section 84-1812 spelled out the distribution of the proceeds of said tax. Under that statute seventy-five percent of all tax funds received by the state treasurer from the gasoline license tax was deposited and credited to the state highway fund, and twenty-five percent to a special fund designated as "gasoline license drawback fund." This latter fund was for the purpose of making refunds provided for by section 84-1818, and it was further provided that at the end of each fiscal year the state treasurer was required to transfer all the unexpended tax funds in the drawback fund to the state highway fund. Thus, prior to 1963, *all* tax funds received from the gasoline license tax, save and except only for statutory refunds, were paid into the state highway fund.

Then came the enactment of Chapter 223, effective on July 1, 1963. Insofar as here applicable, this chapter amended· the

existing law as follows, the amendatory language being italicized:

"Section 1.  Section 84-1812, R.C.M.1947, is amended to read as follows:

" '84-1812.   Distribution and Use of Proceeds of tax—Funds. All money received by the state treasurer in payment of license taxes under the provisions of this act shall be deposited *and one per centum (1%) of the total amount collected shall be credited to the state park fund and the balance deposited and credited as follows:*

" '(a)   *Seventy-five per centum (75%) to the state highway fund.*

" '(b)   *Twenty-five per centum (25%) to a special fund designated as "the gasoline license drawback fund."*

" '*The amount deposited and credited to the state park fund shall be used by the state highway commission for the creation, improvement, and maintenance of state parks wherein motor boating is allowed.   \* \* \*'*

"*The legislature hereby finds as a fact that of all the fuel sold in the state of Montana for consumption in internal combustion engines, not less than one per centum (1%) of this fuel is used for purposes of propelling boats on waterways of this state.*"

The 1963 Legislature failed, however, to pass an appropriation bill for this special fund and a ruling was issued by the state controller that no moneys could be dispersed to the designated state parks. It was thus necessary for the sponsors of Chapter 223 to amend the act in the 1965 Legislative Assembly to provide for an earmarked revenue fund.  There were three acts passed by the 1965 Legislature dealing with section 84-1812, (Chapter 69, Chapter 248, section 4-301 of Chapter 197), the amendatory language first enacted by Chapter 223, in 1963, was included virtually verbatim in each of the 1965 legislative acts.

Chapter 224, Laws of 1963, is the statute here involved in

the "refund" question. This chapter did but one thing—it amended section 84-1818, R.C.M.1947, by eliminating the right of Montana boat owners to apply for a refund of gasoline tax paid on gasoline used for boating purposes.

The legislature in 1967 made certain changes in the rate of tax, right to refund, and the percentage of earmarked funds; but these matters are not pertinent here.

The case was submitted to the district court on the pleadings, depositions, briefs and oral argument. Findings offered by Harvey were adopted as the district court's findings.

The issues on appeal are set forth in specifications of error as follows:

The district court:

1. Erred in the following findings of fact:

(a) That Harvey, in the purchase of gasoline for the operation of his automobile has paid and will continue to pay "a tax of six cents on each gallon of gasoline so purchased, which said tax is imposed by the laws of the State of Montana;"

(b) That Harvey, in the operation of his motorboat, has paid and will continue to pay in the future "a license tax of six cents on each gallon of gasoline so purchased for use in propelling said motorboat;"

(c) "That under the gasoline license tax (Section 84-1801.1) all purchasers of gasoline are required to pay the license tax;" and

(d) "That Chapter 224 discriminates against plaintiff and all others similiarly situated, by imposing upon them a nonrefundable license tax" while "other non-highway users of gasoline are permitted to apply for and receive a refund of said tax, although all of said non-highway users, including plaintiff, are but one class;" each for the reason that said license tax is *not* imposed directly upon the consumer but is actually imposed upon *dealers* of gasoline in Montana, as provided in sections 84-1801.1 and 84-1802.1, R.C.M.1947, and further for the reason

that all non-highway users do not reasonably constitute a "class" of taxpayers under the law.

2. Erred in finding as a fact "that something *less* than One Percent (1%) of all gasoline sold in Montana is used for propelling boats on waterways of the state."

3. Erred in finding as a fact "that the legislative finding of fact set forth in Chapter 223, Laws of 1963, and re-enacted in the 1965 acts, is conjectural, speculative, arbitrary and incorrect."

4. Erred in concluding:

(a) That Chapter 223, Laws of 1963; section 7 of Chapter 69; and section 1 of Chapter 248, Laws of 1965, were in violation of Article XII, section 1b of the Montana Constitution;

(b) That section 4-301 of Chapter 197, Laws of 1965, was in violation of Article XII, section 1b, upon its effective date (December 31, 1966);

(c) That Chapter 224, Laws of 1963, is in violation of sections 1 and 2, Article XII of the Montana Constitution "in that it assesses and imposes a non-refundable tax which results in unreasonable and arbitrary discrimination;" and

(d) That Chapter 224, Laws of 1963, is in violation of sections 3 and 27, Article III, Montana Constitution, and the Fourteenth Amendment of the Constitution of the United States "in that it denies to plaintiff * * * the equal protection of the law and provides for a tax upon plaintiff unrelated to the purpose of said chapter."

5. Erred in refusing the State's request for findings of fact and conclusions of law.

6. Erred in entering judgment for Harvey.

These issues in simplified form are: plaintiff Harvey alleges (1) since he consumes gasoline in his motorboat, an off-highway use, he is entitled to a refund of 6¢ per gallon by reason of due process or equal protection of the law; and (2) the legislative finding of fact that not less than 1% of all gasoline sold in Montana, is consumed by motorboats is erroneous and

therefore the deposit of 1% of gasoline tax revenues into the state park fund violates the so-called "anti-diversion" amendment, Article XII, section 1b, of the Montana Constitution. As to Article XII, section 1b, we have previously quoted it and will refer to it simply as the anti-diversion amendment.

Paraphrasing the anti-diversion amendment, it applies to license tax moneys derived from the sale of gasoline consumed on Montana's highways. The words "consumed on Montana highways" come from the language, "license taxes relating to * * * operation or use of vehicles on the public highways or to fuels used for the propulsion of such vehicles * * *." Certainly a motorboat is not one of "such vehicles." Therefore, the language must, and we hold does, mean fuels used for propulsion of vehicles on public highways, or, as we put it above "consumed on highways." Not only motorboats, but lawn mowers, chain saws, water pumps, tractors and a multitude of motors not remotely related to highways use gasoline as a combustion or propulsion source.

Going on, plaintiff Harvey alleges that he and others similarly situated, including farmers, loggers, etc., are one class of gasoline consumer (the off-highway consumer) and, therefore, any legislation which removes or restricts his right to a tax refund, while allowing other off-highway users to apply for said refund, is discriminatory and a denial of equal protection of the law.

Treating the first issue above, it seems necessary to clarify the nature of the gasoline tax. Section 84-1801.1, R.C.M.1947, states: "every dealer * * * shall * * * pay * * * a license tax for the privilege of engaging in and carrying on such business in this state * * *."

The license tax is imposed upon and paid by all dealers who (1) produce, (2) refine, (3) manufacture, (4) compound, (5) import, or (6) purchase gasoline in Montana. It is a dealer's tax as opposed to a user's tax. (For example of the user tax, see section 84-1832, R.C.M.1947.) Thus, Harvey is not

technically taxed. The fact that such taxes are passed on to the user in the form of the increased price he pays does not change for our purposes here the character of the tax.

■ ■ In 1965 the license tax produced $18,926,896.28 in revenue to the state. The "anti-diversion amendment" approved by the people on November 6, 1956, prohibited the legislature from using highway-derived revenue for other than highway purposes. But, it specifically referred to "statutory refunds and adjustments." Section 84-1818, which Chapter 224, Laws of 1963, amended, provides for the refunds. Purely as a matter of grace the legislature allowed refunds to off-highway users. 53 C.J.S. Licenses § 57a, p. 696; 84 C.J.S. Taxation § 632, p. 1265. Other than as prohibited by the anti-diversion amendment the state may apply the tax funds to any public purpose. State ex rel. Diederichs v. State Highway Com., 89 Mont. 205, 296 P. 1033.

■ Plaintiff Harvey, as related before, brought the action as a "boat user" and for others similarly situated, viz. "boat users." Yet now, and the district court erroneously adopted this, Harvey would profess to represent all "non-highway users." Harvey, as shown above, is not the "tax payer." The dealer is. The language of the taxing statute is clear, and the trial court's so-called finding that Chapter 224, Laws of 1963, imposes a refundable license tax upon all *purchasers* of gasoline is simply not the case and erroneous.

Harvey, under his own pleadings and the admitted facts, is simply not representing anyone except "boat users" in the non-highway user category.

■ ■ For both reasons, not being the "tax payer" and not being a representative of all "non-highway users," Harvey cannot claim a denial of "equal protection" of the laws. But, even if Harvey was thought of as the tax payer, we see no reason to group *all* non-highway users as one class. They would be truly a conglomerate of unrelated persons ranging from dry cleaners, loggers, farmers, to airplane pilots. The

legislature, in treating motorboat users as one class, cannot be said to have acted arbitrarily and capriciously. On the contrary the distinction is substantial and clear. State v. Sunburst Refining Co., 73 Mont. 68, 235 P. 428; State ex rel. Schultz-Lindsay Construction Company v. State Board of Equalization, 145 Mont. 380, 403 P.2d 635.

Accordingly we hold that the district court was in error on the first issue.

As to the second issue, because of the manner in which the case was handled, it is important to set forth briefly certain legal presumptions and rules.

■ ■ The burden of proving unconstitutionality of a statute is upon the attacker. The evidence must overcome the presumption of constitutionality beyond a reasonable doubt. See Garden Spot Market, Inc. v. Byrne (State Bd. of Equalization), 141 Mont. 382, 378 P.2d 220, for other citations.

■ In this situation, the legislature has made findings of fact. Thus it was Harvey's burden of proof to prove beyond a reasonable doubt that the legislature's findings were erroneous. The State did *not* have to prove their correctness.

As opposed to the foregoing presumptions, Harvey, in his brief, sets up the presumption of correctness of the trial court's findings. Harvey also cites the failure of the State to make exceptions. See Rozan v. Rosen, 150 Mont., 121, 431 P.2d 870; and Olsen v. United Benefit Life Insurance Company, 150 Mont., 147, 432 P.2d 381.

We need not dwell long on this issue since it is obvious that the so-called findings of fact are in fact almost exclusively conclusions of law. The question in this case is *not* whether motor fuel taxes from sales for use in motorboats is more or less than 1% of the total motor fuel tax. The question *is* whether or not all motor fuel taxes relating to the use of vehicles on public highways (or as we previously expressed it "consumed on highways") are expended on public highways.

■ Many uses of motor fuels do not fall in either of the

foregoing classes. Refunds of such taxes for non-highway use totaled 11.3% of the total collected in the year 1963-1964 and 12.1% in the year 1964-1965. Harvey had the burden of proving that the highway fund was not getting its share, but *he made no attempt to prove it.* No evidence was offered to establish the amount that should be deposited to the highway fund. It was established in the depositions that some users do not claim refunds; and it is not mere speculation that the highway fund thereby benefits; or, in other words actually receives a bonus.

It is apparent that the trial court hinged its judgment solely upon a determination that the legislative finding of fact was wrong. The legislature found as a fact that not less than one per centum of all fuel sold is used for propelling boats on waterways. As we have attempted to point out before, even if Harvey disproved the legislative finding of fact, if it causes no wrongful diversion of gasoline tax revenue relating to highway use, then it is not in violation of Article XII, section 1b.

But, turning to the legislative finding of fact, there is evidence as to testimony taken by legislative committees from surveys and a statistical report of the Outboard Boat Club of America. Harvey's effort was to discredit the surveys and report. There is no doubt that the courts may inquire into legislative findings. In Rider v. Cooney, et al., 94 Mont. 295, 313, 23 P.2d 261, 265, this Court said:

"So in this case the Legislature may determine the policy to be followed in the leasing of the state grazing lands, and that question may not be reviewed by the courts. But the question as to whether or not, under the policy adopted by the Legislature, the market value for the grazing lands is being received, is a question of fact which may be investigated by a proper tribunal in an appropriate proceeding. *It is our intention by this opinion not to in any manner foreclose the judicial investigation of this fact, but only to point out that the contention that it may not be investigated under proper plead-*

*ings and in a proper tribunal is without merit."* (Emphasis supplied.)

On the other hand, the general rule is that the courts will acquiesce in the legislative decision unless it is clearly erroneous, arbitrary, or wholly unwarranted. See 16 Am.Jur. 2d., Constitutional Law § 171, p. 388. Harvey's burden, even under his theory, was to prove that less than 1% of gasoline purchased was used in boat motors. His attempt was to merely discredit the information. As we have related before, however, the question as regards a violation of the "anti-diversion" amendment is what amount of gasoline is consumed on the highways. That was Harvey's burden of proof and he simply failed to carry that burden.

Thus the district court was in error on the second issue, the statutes involved were not shown to be unconstitutional as in violation of the anti-diversion amendment.

Accordingly, we reverse the judgment of the district court and direct the district court to enter judgment for the State in accordance with the State's proposed findings and conclusions submitted.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR and JOHN CONWAY HARRISON, concur.